## LEITCH MANUFACTURING CO. *v.* BARBER COMPANY.

No. 208. Argued December 14, 1937.—Decided January 3, 1938.

*Mr. Samuel Ostrolenk* for petitioner.

*Mr. George J. Harding,* with whom *Mr. Frank S. Busser* was on the brief, for respondent.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

The question for decision is whether the owner of a process patent may by suit for contributory infringement suppress competition in the sale of unpatented material to be used in practicing the process.

The Barber Company brought, in the federal court for New Jersey, against the Leitch Manufacturing Company,[1] this suit to enjoin the alleged contributory in-

---

[1] The suit was begun by The Barber Asphalt Company, the then owner of the patent. During the pendency of the suit that corporation transferred the patent, together with all claims for damages and profits for past infringement and the right to sue therefor, to The Barber Company, Inc. Upon supplemental bill of complaint, it was substituted as plaintiff. The Stulz-Sickles Company, the jobber through whom the sale was made, was a co-defendant throughout the proceedings below; but declined to join in the petition for certiorari.

fringement of patent No. 1,684,671, dated September 18, 1928, by selling and delivering bituminous emulsion to a road builder, knowing that it was to be used in Newark in accordance with the method defined in the claims of the patent. Besides denying the validity of the patent, this further defense was interposed. It was insisted that the suit could not be maintained, even if the patent were valid, because to do so would give a limited monopoly of an unpatented staple article of commerce. The following facts were proved or admitted.

The Barber Company and Leitch Manufacturing Company are competing manufacturers of bituminous emulsion—an unpatented staple article of commerce produced in the United States by many concerns and in common use by their customers for many purposes. By builders of macadam roads the emulsion has long been used as a coating for crushed stone and otherwise. With builders of cement concrete roads it has recently come into use for a film on the surface of the roadway to retard evaporation during curing. For the method of so retarding evaporation The Barber Company acquired the process patent sued on, and seeks to use it to secure a limited monopoly in the business of producing and selling the bituminous material for practicing and carrying out the patented method. The company does not itself engage in road building, or compete with road contractors. It does not seek to make road builders pay a royalty for employing the patented method. It does not grant to road builders a written license to use the process.[2] But it adopts a method of doing the business which is the prac-

---

[2] No written license had, so far as appears, been granted by The Barber Company to any one. Its predecessor, The Barber Asphalt Company (see note 1), had granted a written license to Johnson-March Corporation, which paid no royalty but bought from The Barber Asphalt Company "cutback material" for use in the East, and "Trinidad or Bermudez asphalt" for use in the West.

tical equivalent of granting a written license with a condition that the patented method may be practiced only with emulsion purchased from it. For any road builder can buy emulsion from it for that purpose, and whenever such a sale is made, the law implies authority to practice the invention. On the other hand The Barber Company sues as contributory infringer a competing manufacturer of this unpatented material who sells it to a road builder for such use. Thus, the sole purpose to which the patent is put is thereby to suppress competition in the production and sale of staple unpatented material for this use in road building.

The District Court discussed, but found it unnecessary to pass upon, this defense, as it dismissed the bill on the ground that the patent was void. 14 F. Supp. 212. The Court of Appeals sustained the validity of the patent; concluded that there was contributory infringement; held that maintenance of the suit was not forbidden by the rule declared in *Carbice Corporation* v. *American Patents Development Corp.*, 283 U. S. 27; and directed that the District Court enter a decree adjudging the claims in issue valid and infringed, and awarding an accounting. 89 F. (2d) 960. One judge dissented on the ground that the decree dismissing the bill should have been affirmed under the rule declared in the *Carbice* case. A petition for certiorari limited to that question was applied for and granted.

That the patent did not confer upon The Barber Company the right to be free from competition in supplying unpatented material to be used in practicing the invention was settled by the rule declared in the *Carbice* case. That suit was likewise one to enjoin an alleged contributory infringer. The subject of the patent was a refrigerating transportation package in which the refrigerant to be used was solid carbon dioxide, or "dry ice." The sole business of the Dry Ice Corporation was

to make and sell dry ice—which is unpatented material. It did not make or sell transportation packages in which dry ice was used as a refrigerant. It did not issue to other concerns licenses to make such packages upon payment of a stipulated royalty. It did not formally license buyers of its dry ice to use the invention in suit. But each invoice for dry ice bore a notice in effect that the patented container could be used only with dry ice purchased from the Corporation. In declaring that relief must be denied the Court said:

"The Dry Ice Corporation has no right to be free from competition in the sale of solid carbon dioxide. Control over the supply of such unpatented material is beyond the scope of the patentee's monopoly; and this limitation, inherent in the patent grant, is not dependent upon the peculiar function or character of the unpatented material or on the way in which it is used. Relief is denied because the Dry Ice Corporation is attempting, without sanction of law, to employ the patent to secure a limited monopoly of unpatented material used in applying the invention." (pp. 33–34.)

"In the case at bar the plaintiffs neither sell nor license others to sell complete transportation packages. They supply merely one of several materials entering into the combination; and on that commodity they have not been granted a monopoly. Their attempt to secure one cannot be sanctioned." (pp. 34–35.)

The Barber Company contends that the rule of the *Carbice* case is not applicable because it has not entered into any contract or agreement aimed at expansion of the patent monopoly. It argues that in the *Carbice* case, as in *Motion Picture Patents Co.* v. *Universal Film Mfg. Co.*, 243 U. S. 502, the attempt to secure the "partial monopoly of an unpatented material, outside of and apart from the patent monopoly" was made by contract or notice, whereas The Barber Company has made no attempt

"by contract, notice, or otherwise, to expand its patent monopoly by limitations, or to reserve or create any monopoly in emulsion outside of, or apart from, its patent monopoly"; that its "customers for emulsion have no more than the unconditioned license to use implied by law, and are under no restriction"; and that neither the defendant nor its customers has any "relation with the patent owner."

The distinction upon which The Barber Company thus rests is without legal significance. The Court held in the *Carbice* case that the limitation upon the scope or use of the patent which it applied was "inherent in the patent grant." It denied relief, not because there was a contract or notice held to be inoperative, but on the broad ground that the owner of the patent monopoly, ignoring the limitation "inherent in the patent grant," sought by its method of doing business to extend the monopoly to unpatented material used in practicing the invention. By the rule there declared every use of a patent as a means of obtaining a limited monopoly of unpatented material is prohibited. It applies whether the patent be for a machine, a product, or a process. It applies whatever the nature of the device by which the owner of the patent seeks to effect such unauthorized extension of the monopoly. Nothing in *Leeds & Catlin Co.* v. *Victor Talking Machine Co.,* 213 U. S. 325, limits it.

*Reversed.*

MR. JUSTICE CARDOZO took no part in the consideration or decision of the case.