## AMERICAN LECITHIN CO. v. WAR-FIELD CO.

## WARFIELD CO. v. AMERICAN LECITHIN CO.

### Nos. 6767, 6768.

Circuit Court of Appeals, Seventh Circuit.

June 13, 1939.

Rehearing Denied July 15, 1939.

Ira J. Wilson, of Chicago, Ill., and John W. Thompson and Daniel L. Morris, both of New York City, for American Lecithin Co.

Russell Wiles, Charles J. Merriam, Marcus A. Hirschl, George A. Chritton, William S. Warfield III, and Chritton, Wiles, Davies, Hirschl & Dawson, all of Chicago, Ill., for Warfield Co.

Before MAJOR, TREANOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

These are cross appeals taken from the decree of the district court in a suit charging infringement of the Working patent, No. 1,781,672 (dated November 11, 1930), by the use of lecithin in the production of chocolate in accordance with the method defined in the claims of the patent. The district court denied relief on the ground that the patentee was attempting, without sanction of law, to employ the patent to secure a limited monopoly of unpatented lecithin, a natural organic substance occurring in small amounts in practically all living cells and in considerable quantities in egg yolk and in seeds of most plants.[1]

For many years the chocolate industry had suffered heavy losses from changes in the appearance of the chocolate, known as "graying" or "blooming", which is generally considered in the confectionery art to be due to the melting and movement of the cocoa butter, a constituent of most chocolate and chocolate preparations. The Working patent, owned by the American Lecithin Company, relates in particular to the addition of .1% to 1% of lecithin (an unpatented article of commerce) to the cocoa butter content of chocolate in the course of manufacture, whereby the stability of the chocolate is improved (graying is retarded), the amount of cocoa butter is reduced (around 5% is saved), and better working qualities result when the chocolate is melted for the coating of confections (fluidity is increased).

After stating the invention substantially as above described, the patent recites thirteen claims, of which claims 3, 8, and 13 may be regarded as typical and as distinctly involved in this case:

"3. In the art of making confectionery, the herein described improvement which comprises incorporating, at any stage of the manufacture, with confectionery material including chocolate carrying such amounts of fatty material as to be normally, subject to 'graying', a sufficient percentage of lecithin to retard 'graying'.

"8. A chocolate coating mass which contains a smaller amount of fat than that normally required for satisfactory dipping, and an amount of lecithin sufficient to impart a sufficient degree of fluidity thereto, to make it satisfactory for application as a coating, by dipping.

"13. In the preparation of chocolate mass, the step of adding, at any stage of the manufacture, about 0.2% to 0.3% of lecithin whereby 'graying' of the finished chocolate product is at least retarded."

In this case the pleadings, i. e., the complaint and the amended answer, show, and the facts clearly bear these pleadings out, that the plaintiff, the American Lecithin Company, which supplied the unpatented lecithin to purchasing chocolate manufacturers, did not practice the Working patent (that is, it did not itself make chocolate) or issue to chocolate manufacturers licenses to make such patented chocolate upon payment of a stipulated royalty. Instead of this the plaintiff sought to obtain its profits by the sale of the lecithin to the chocolate manufacturers.

Anyone buying lecithin from the plaintiff for the purpose of using the commodity to make the patented chocolate was

---

[1] The word "lecithin", as known in the chocolate industry, has reference to commercial preparations such as those sold by the plaintiff in this case, which contain 60% (more or less) of pure lecithin and 40% (more or less) of oil or fat of vegetable origin.

entitled to practice the invention by implied license. At first the defendant, the Warfield Company, whose business is to make chocolate and to sell it chiefly to candy makers who use it in making solid chocolate bars and in coating confections, purchased its lecithin from the plaintiff. Plaintiff placed no restrictions on the use of the lecithin sold by it and acquiesced in its use by defendant in making the chocolate bars. Later the defendant bought lecithin from the plaintiff's competitors. The alleged infringement of the patent consists of the defendant's buying lecithin from the plaintiff's competitors and of using this lecithin in accordance with the method defined in the claims of the patent.

The plaintiff then brought this suit to enjoin infringement by the defendant, for an accounting of profits, and for damages. The defendant in turn set up several defenses, namely, invalidity, non-infringement, implied license, and monopoly. In addition, the defendant counterclaimed for an injunction against future suits and asked for damages accruing from plaintiff's monopolizing conduct. The district court did not deem it necessary to discuss validity, found as a matter of fact that the defendant made and sold chocolate incorporating lecithin in amounts within the range as claimed in the patent, concluded that the license to practice the patent ceased as soon as the lecithin purchased from the plaintiff had been consumed, and dismissed the counterclaim. The court, however, held the monopoly defense good and denied relief on the ground that the patentee was attempting to employ the Working patent to secure a limited monopoly of the unpatented lecithin.

From this decree the plaintiff appealed on the ground that the monopoly defense, admittedly valid in contributory infringement cases, e. g., Carbice Corp. v. American Patents Development Corp., 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819; Leitch Mfg. Co. v. Barber Co., 302 U.S. 458, 58 S.Ct. 288, 82 L.Ed. 371; J. C. Ferguson Mfg. Works, Inc., v. American Lecithin Co., 1 Cir., 94 F.2d 729, was not available in a direct infringement case. We shall dispose of this contention later. The defendant also appealed from the decree on the grounds that the district court erred in dismissing the counterclaim, in limiting the license to the lecithin purchased from the plaintiff, and in not ordering the patent invalid and not infringed. We shall dispose of these contentions at this time.

The district court did not deem it necessary to pass on the validity of the patent. With the view that we take of the instant situation, believing as did the district court that the monopoly defense is impregnable, it is thought best not to dispose of the matter. Were we inclined to reverse on the monopoly ground, it is probable that under the circumstances we would consider it proper to remand the case for the trial court's consideration, rather than pass on the validity of the patent in the first instance. In this connection it is to be noted that the Working patent here in question was recently subjected to judicial scrutiny. In American Lecithin Co. ·v. Ferguson Mfg. Works, 19 F.Supp. 294, the district court, sitting in the district of Rhode Island, discussed the Working patent at great length and concluded in favor of its validity. In the review of the case on appeal, the Circuit Court of Appeals for the first circuit, in 94 F.2d 729, reversed on another ground, namely, plaintiff's monopolizing conduct, without ruling definitely on the matter of validity.

The defendant argues that the "infringement of the claims relating to the retardation of graying has not been proved" and suggests that it is possible that the use of the lecithin purchased from the plaintiff's competitors does not retard graying as the use of the plaintiff's lecithin does. Even if it was essential to discuss this argument on this appeal, we would not be convinced by the logic urged upon the court. The district court found, and the defendant's special answer to one of the plaintiff's interrogatories clearly shows, that the defendant made and sold chocolate having lecithin added thereto in the amounts within the range as claimed in the patent. Nowhere in the record is there even an intimation that lecithin, as sold in the trade for its use as a component of chocolate, possessed different qualities as far as its effect on graying was concerned.

It is interesting to note, at this time, that the defendant concedes that the use of lecithin purchased from the plaintiff's competitors results in cocoa butter reduction and that in this regard it infringes the patent. We can not appreciate the cocoa butter concession and the graying retardation denial. The inconsistency

which we perceive here might well be expressed in the words of defendant's witness Warfield, who stated that "the more cocoa butter you have in chocolate, the more graying you get. * * * We use the lecithin to reduce the cocoa butter," or in the words of plaintiff's witness Harris, who stated that "the graying is due to the amount of cocoa butter present" and "the lecithin permits the use of a lower percentage of cocoa butter in the chocolate."

Considering further the basis of defendant's contention, we find that the defendant in its amended answer, in pleading the defense of monopoly, admitted in effect that the lecithin bought from others was used in precisely the same way as plaintiff's lecithin was. Going directly to the evidence adduced, we find no conflict as to the effect on graying of chocolate with or without lecithin. Edwards, general consultant to manufacturers of chocolate and users of chocolate coating, testified that the use of lecithin retarded graying in chocolate. Harris, consulting chemist for chocolate manufacturers, corroborated this testimony. Sobol, buyer of chocolate coating from the defendant, stated that the defendant's chocolate coating, admittedly treated by an addition of lecithin in amounts within the claims of the patent, resisted graying better than chocolate without lecithin.

■ The defendant's contention that the district court erred in dismissing the counterclaim does not challenge our serious consideration. We are convinced that the defendant failed to establish the basis necessary to invoke the judicial remedy requested. It is one thing to claim an injunction against future suits and to claim damages as accruing from the plaintiff's attempt to secure a limited monopoly of the unpatented licithin. It is quite another thing to prove that one is entitled to such relief. The record is clear, and we are satisfied that the defendant was not in position to, nor did it, show substantial injury, a condition precedent to the relief sought.

■ The discussion above takes care of the contentions made by the defendant in its appeal except one, namely, that the district court erred in holding that the implied license to practice the patent terminated as soon as the licithin purchased from the plaintiff was consumed. The defendant argues seriously that there is an implied license to practice the patented invention for the life of the patent and maintains that the Carbice case, supra, is grounded on the theory that a license conditioned on the purchase of unpatented commodities continues but that the condition fails. It might be true that the condition fails under such circumstances. But it is not necessarily true that from failure of condition follows continuation of license.

The question resolves itself as follows: What is the extent of the license? To answer this question necessitates the ascertainment of the arrangement between the licensor and licensee. Surely the defendant would not urge upon us that the life of the license is 17 years (the statutory period) in the following situation, just because the condition is found to be illegal by the courts: S grants B a license to practice S's invention for one year, on the condition that B buys S's unpatented commodity used in the invention. To contend that the license continues for 17 years in such a situation, because the condition is void under the laws, violates the dictates of common sense. Yet, intimations exuding from brief of defendant's counsel would direct this court to a similar conclusion.

We believe that defendant's counsel points the way to the answer by saying in his brief that "the true understanding is better expressed in plaintiff's letter" written to defendant. This letter stated that "the use of lecithin in chocolate is patented. * * * Our customers using Lexin (trade-mark for plaintiff's lecithin) are licensed under this patent (Working) and use of any other lecithin within the scope of the above patent, without license, would constitute infringement." This letter plus the facts already stated in this opinion constitute the background for the arrangement between the plaintiff and the defendant. The extent of the implied license depends upon these facts and circumstances.

To us it is clear, if the record means anything and if in particular the letter is to be given any weight at all, that the license in the instant case was only intended to operate as long as the defendant used the plaintiff's lecithin.

■ Counsel for defendant also urges that "the technical basis of the Carbice case was that there was no contributory infringement because the alleged direct in-

fringer was licensed, and so not an infringer at all." In addition, he tells us that this court "can declare that the condition and the license must fail, in which case the plaintiff's illegal conduct will have earned it an improved position. Or the court may hold that the license continues, but that the condition fails. This was the holding in the Carbice case * * *." We can not agree with defendant's counsel at all on this point. To us this conception of the Carbice case is illustrative of wishful thinking.

We believe that in the Carbice case the Supreme Court held that the patentee may not use his patent to monopolize unpatented supplies. It is not our impression that the Supreme Court stated that the defendant in that case did not infringe the patent. The Supreme Court merely stated that such a patentee would not receive the aid of the courts. We can not believe that the Supreme Court meant to penalize the patentee by destroying his patent. We think that the Supreme Court warned him that, although "Within his domain, the patentee is czar," Victor Talking Machine Co. v. The Fair, 7 Cir., 123 F. 424, 426, any attempt to extend the patent monopoly would not be tolerated. After all is said, if the patent is valid, the defendant can not urge that this patent monopoly be taken from him. Carbice case, supra, 283 U.S. page 31, 51 S.Ct. 334, 75 L.Ed. 819. At the most, the defendant here can only urge that the courts refuse aid to a patentee who tries by virtue of his patent to extend his control over unpatented commodities.

■ The discussions above dispose of the defendant's assignment of errors. There remains for our scrutiny plaintiff's appeal from the decree of the district court denying relief because the plaintiff was using its patent to monopolize the unpatented licithin. The plaintiff argues that the defense of extra-legal monopolization, admittedly valid in contributory infringement cases, is not available in direct infringement cases. This argument would permit the plaintiff to monopolize the sale of licithin by controlling the buyers in the trade, although the law forbids the same result by controlling the sellers in the trade. Yet, to sanction control over buyers is to permit the plaintiff to control his competing sellers. It might be said, therefore, that the plaintiff is urging this court to approve doing in one form what can not be done in another form.

The record bears out that the plaintiff's method of doing business was, to use the language of the Leitch case [302 U.S. 458, 58 S.Ct. 289], the "practical equivalent of granting a written license with a condition that the patented method may be practiced only with" lecithin purchased from it, the "sole purpose to which the patent is put" being "to suppress competition in the production and sale of staple unpatented material for" use in chocolate making. We are of the opinion, as was the district court, that in such a case the defense of attempted extralegal monopolization is sound. Motion Picture Patents Co. v. Universal Film Co., 243 U.S. 502, 510, 513, 515, 518, 37 S.Ct. 416, 61 L.Ed. 871, L.R.A.1917E, 1187, Ann.Cas.1918A, 959; see also Carbice Corp. v. American Patents Corp., 283 U.S. 27, 33, 34, 51 S.Ct. 334, 75 L.Ed. 819; Leitch Mfg. Co. v. Barber Co., 302 U.S. 458, 463, 58 S.Ct. 288, 82 L.Ed. 371; cf. United Shoe Machinery Co. v. U. S., 258 U.S. 451, 462, 463, 42 S.Ct. 363, 66 L.Ed. 708; United States v. General Electric Co., 272 U.S. 476, 492, 493, 47 S.Ct. 192, 71 L.Ed. 362.

It is interesting to note that running through the brief of defendant's counsel is the constant thought that the plaintiff's monopolizing misconduct should work an affirmative penalty upon plaintiff such as a forfeiture of the patent or an implied license for the statutory period. On the other hand, running through the brief of plaintiff's counsel is the idea that, since a patentee may keep his invention wholly out of use, the plaintiff may permit its use by a buyer on any condition it saw fit to impose. We can not take sides with either. In the discussions above, we believe we have shown that the defendant's theory is really unsound. As to the plaintiff's theory, we see in it another expression of the minority view observed in the Motion Picture Co. case, 243 U.S. 502, 514, 519, 37 S.Ct. 416, 61 L.Ed. 871, L.R.A. 1917E, 1187, Ann.Cas.1918A, 959, and for this reason it can not demand attention in this court. Our view in the whole matter follows.

■ It is our opinion, as it was of Judge Baker of this court as far back as 1903, that "Within his domain, the patentee is czar." Victor Talking Machine Co. v. The Fair, 7 Cir., 123 F. 424, 426. But this does not mean that the patentee can do anything he pleases. See Chafee, Equitable Servitudes on Chattels, 41

212

Harv.L.R. 945, 954, 999-1005. The Supreme Court has often stated that his domain has boundaries, those set forth in his specifications and claims. That is to say, the "patent law simply protects him in the monopoly of that which he has invented and has described in the claims of his patent." Motion Picture Co. case, supra, 243 U.S. page 510, 37 S.Ct. page 418, 61 L.Ed. 871, L.R.A.1917E, 1187, Ann.Cas.1918A, 959.

■ Thus, a patentee being an absolute owner may shelve his patent and keep it out of use for the period of his statutory grant. The Paper Bag Patent Case, 210 U.S. 405-424, 28 S.Ct. 748, 52 L.Ed. 1122. In general, he may grant licenses to whom he wants, Carbice case, supra, 283 U.S. page 31, 51 S.Ct. 334, 75 L.Ed. 819, and restrict the license as to time, territory, and purpose, Mitchell v. Hawley, 83 U.S. 544, 16 Wall. 544, 21 L.Ed. 322; Providence Rubber Co. v. Goodyear, 9 Wall. 788, 76 U.S. 788, 19 L.Ed. 566; Indiana Mfg. Co. v. Nichols & Shepard Co., C.C., 190 F. 579-582. However, he can not exercise powers "inconsistent with the limited scope of the patent monopoly" itself. Carbice case, supra, 283 U.S. page 31, 51 S.Ct. page 335, 75 L.Ed. 819.

■ Stated in another way, the underlying question in each case is directed to the inquiry as to whether the patentee's activities are within or beyond his domain. In determining when courts will interfere with the patentee's power to sue infringers (contributory or direct), it is necessary to take into consideration whether, as a practical matter, the exercise of the patent monopoly will result in a limited monopoly in an unpatented commodity, and whether the patentee seeks to derive his profits not from the invention itself but from the unpatented supplies used in the invention.

■ Thus, in the instant case, it is obvious that the sole protection sought by the patentee was of a limited monopoly for its unpatented lecithin. It did not try to obtain any income from the monopoly expressly granted by the patent itself, either by practicing the patented method or by granting licenses for a royalty. For this reason, a different light is shed upon the rights of the patentee, and for this reason relief is denied the patentee. The courts are vigilant that the patent owner shall control the invention claimed in the patent and no more. The plaintiff's method of doing business had only one pur-

pose, the doing by indirection what was prohibited directly, i. e., the securing of a monopoly in the sale of lecithin, a commodity not coming within the boundaries of the patent owned by the plaintiff. This action the courts will not sanction.

We conclude, therefore, that the plaintiff's attempt to extend its patent monopoly beyond the boundaries described in the claims of the patent is condemned under the law. For this reason relief to the plaintiff is denied, and the decree of the district court is affirmed.