## CELANESE CORPORATION OF AMERICA v. RIBBON NARROW FABRICS CO., Inc.

District Court, S. D. New York.

May 9, 1940.

Cooper, Kerr & Dunham, of New York City (Drury W. Cooper and Thomas J. Byrne, both of New York City, of counsel), for plaintiff.

Darby & Darby, of New York City (William Davis, Samuel E. Darby, Jr., and Floyd H. Crews, all of New York City, of counsel), for defendant.

GALSTON, District Judge.

The complaint alleges infringement of two patents, one to Dreyfus, No. 1,773,967, relating to a process of cutting fabric and the product thereof, and patent No. 2,086,238 to Herbert Platt, for a ribbon cutter. The answers of defendant to plaintiff's interrogatories, followed by an inspection of the defendant's plant, led to the withdrawal of the Platt patent and a decree of non-infringement as to that patent was consented to at the opening of the trial.

The Dreyfus patent in suit was granted on August 26, 1930 on an application filed October 5, 1927. The invention relates to a method of cutting fabric made of thermoplastic or organic derivatives of cellulose, so that the cut edges will not fray or ravel. The specification recites that theretofore whenever a woven or knitted fabric was cut in the ordinary manner by means of a knife or shears it was found necessary to hem or sew the cut edge before the fabric could be used in order to avoid raveling along the cut edge. Dreyfus indicates that the fabric to be used in practicing his invention is made in whole or in part of a material that can be fused by the action of heat, or can be dissolved by a solvent, or can be softened by a softening agent. He states that the fabric may be composed entirely of one of the thermoplastic compounds of cellulose, or of a mixture of such compounds, and adds that the fabric need not be entirely of the above cellulose compounds, but may be a mixed fabric containing yarns of the cellulose compounds and yarns of vegetable or animal fibres. Examples of such mixed fabrics are mixed cellulose acetate and natural silk, mixed cellulose acetate and cotton, mixed cellulose acetate and wool, etc.

The fabric is cut by means of knives or other cutting means, which, as the specification recites, may be "either hot or cold, and the cut edges are sealed against fraying by fusion or by the action of the solvent or of a softening agent." No specific degree of heat is mentioned, but "The temperature of the cutting device should preferably be sufficiently high to melt the freshly made edge, but not so high as to melt any of the material appreciably distant from the edge, since if too much material is melted the edge so made will be of irregular thickness due to the formation of globules or molten material."

An alternate process is suggested: "Or else the sealing may be further completed when the cutting is done by a hot knife, or it may be done entirely when the cutting is done with a cold knife or mechanism by fusing the cut edges by passing the same along a hot surface maintained at the temperature above indicated, or even by the use of a flame."

A third variety of process is effected by the application of a solvent: "The solvent should preferably be applied in such a manner that the solvent is permitted to remain at the edge of the material being treated, or is permitted to penetrate to a point only slightly removed from the edge in order to prevent the destruction of the fabric."

Claims 6, 7, 8, 9, 11, 12, 16 and 17 are in issue. The first five of these are directed to a process; the last three define an article. The process claims differ somewhat in detail. Claims 6 and 7 describe the sealing of the cut edge by fusing; claims 8 and 9 provide for the employment of a heated blade, and claim 11 uses the broader term, "a heated means".

Of the product claims, 12 defines the edge as one partly liquefied and then permitted to solidify; 16 and 17 define the edge as sealed by fusion.

The witness Whitehead, an engineer in the employ of the plaintiff, described the research work which culminated in the invention of the patent in suit. Commercial cellulose acetate was produced during the last war, and yarn for the first time towards the end of 1919. As its name indicates it is a combination of acetic acid and cellulose. In the commercial forms the percentage of acetic acid is usually between 54 and 55. In the manufacture of yarn the mass formed is dissolved in a volatile solvent such as acetone.

The main business of the plaintiff corporation, as explained by Whitehead, is to sell yarn; but in addition to making and selling yarn is engaged in the manufacture of fabrics of standard widths from 36" to 40" or thereabouts. Fabric, before it is ready for the market, has to be scoured, dyed and finished.

Difficulties of manufacture were encountered in the cut ribbon field. It was explained that cellulose acetate yarn has a very low co-efficient of friction, that is, it slips readily and tends to ravel easily at the edge.

To remedy the fault, at first applying adhesives such as gums and resins to the cutting edge was considered. Such use of adhesive did not meet all requirements, for the ribbons were not fast for laundry. The gum would wash out or become tacky in high or humid atmospheres. The difficulty was then discussed with Camille Dreyfus, the inventor of the patent in suit. Dreyfus suggested that they cut and actually seal the edge of the solvent without penetrating the main body of the fabric, and that "we might even cut and seal it with heat".

In applying the solvent, the filament along the edge was dissolved by acetone being squirted thereon, and a film was formed at the edge. The heat method cut and fused the edge together.

The defendant attacks the validity of the patent on a number of grounds. It appears that the defendant corporation, which was organized in 1920, conducts a business of cutting large bolts of fabrics of all kinds into ribbons of desired widths. It also more recently has purchased complete fabrics of various kinds which it cuts into ribbons of desired widths for sale. Since 1920 the defendant has employed other methods of cutting fabrics into ribbons, one known as the cold and glue process, the other the hot knife process. It is the hot knife process which is charged to infringe the Dreyfus patent. It is the contention of the defendant that the machine which in the early years was used to cut various kinds of fabrics is the same machine as is employed by them for cutting cellulose acetate fabrics. The particular machines employed for cutting the cellulose acetate yarn were used by the defendant as early as 1923 and continuously since. In that respect such use ante-dates the filing date of the application for the

patent in suit by about four years. If the Dreyfus patent is valid there would appear to be no doubt that the defendant infringes the claims in suit, but invalidity is vigorously asserted. The essence of the invention would seem to be the sealing of the edges of the cut fabric either by the action of a solvent or through the application of heat.

Among the prior art patents, that to Small et al., granted August 2, 1927, on an application filed April 7, 1923, is interesting as disclosing a process and an apparatus for cutting sheets of "celluloid-like" materials which contain no or at most only a small amount of volatile solvent. The Small invention applies in particular to such celluloid-like plastic material consisting of or having a base of cellulose acetate. The use of a heated knife for cutting into the sheets is described: "so that the material in the neighborhood of the knife is softened or rendered plastic by the hot edge of the knife and can thus yield more readily to the cutting edge." Thus from this disclosure it appears that even as to materials consisting in part of cellulose acetate it was known in the art that heated means were employed to soften the material. It is true that there is no reference to a temperature sufficiently high to melt the freshly made edge. However, the determination of the temperature to accomplish such purpose is certainly not a matter of invention but rather of mechanical or engineering skill.

Patent No. 1,437,505, issued December 5, 1922, to Fargo, relates to a method for finishing the raw edges of coated fabrics or the like. The discussion of "temperature" for the specific purpose is not unlike the suggestion of the patent in suit. In carrying out the invention a stack of a convenient number of cut blanks is arranged and a torch applied to the fringed edges, "to singe the edges and at the same time heat and fuse the fusible imitation leather composition at the upper and lower parts of the edges * * * the heat of the singeing flame being sufficient for this purpose." The materials referred to for such treatment include pyroxylin coated fabric, and the specification recites: "In the manufacture of pyroxylin coated fabric or artificial or substitute leather, a woven fabric or the like is usually covered with a mixture or composition of cellulose or pyroxylin, a drying oil and a solvent, which, after evaporation, leaves a tough elastic and durable film thoroughly impregnated in the fabric."

Fargo's application of heat was for the purpose of fusing and sealing the raw sheared edges of the fabric. Dreyfus likewise considered the use of a flame (as the equivalent of the hot knife) for the sealing function.

The Fargo patent is also of interest as indicating in Claim 3 the method of fusing. That claim reads: "The method of finishing the edges of fabric, coated and impregnated with a fusible composition of cellulose or the like, comprising singeing the raw edges and fusing the composition to seal said edges."

Patent No. 1,445,992, issued February 20, 1923 to Cameron is for a machine for cutting sheets of material into strips, specifically rubber sheets. The patent is of interest as indicating the object of the inventor in devising a machine to avoid torn or jagged edges in the operation. This he accomplishes by the use of heated wires stretched across a suitable frame to form a grid and which are "electrically heated to the melting point of the material to be cut". Cameron says that the machine may be used "for other materials having similar properties". Now though it may well be contended that fabrics made in part of cellulose acetate differ from sheets of rubber, nevertheless it would appear that Cameron foresaw the possibility of sealing the edges of rubber or any other material the edges of which could be sealed by heated means.

Patent to Sponholz, No. 1,807,887, offered by the defendant as part of the prior art, was issued on April 23, 1929 on an application filed November 23, 1926. This filing date is earlier than that of Dreyfus but not sufficiently early to be considered prior art, since it appears that Dreyfus completed his invention some time in September 1926. Defendant contends that the effective application date of Sponholz in Germany was May 11, 1926; but that is not so in view of Secs. 4886 and 4923 of the Revised Statutes, 35 U.S.C., Secs. 31, 72, 35 U.S.C.A. §§ 31, 72. The time when the German patent become a printed publication is the effective date, and that time does not appear in the record.

But even without the aid of the Sponholz patent it is difficult to see invention in the Dreyfus patent.

The prior art as heretofore analyzed discloses a process of cutting fabric consisting in part of cellulose acetate or similar material, by sealing the cut edge. A machine for cutting was old, heated cutting knives on such machine were old, and though it does not appear that the defendant could have employed a temperature of 1200 degrees Fahrenheit in the cutting of fabrics other than those including in part cellulose acetate without danger of damage to such materials, nevertheless it does not seem that varying the degree of heat to meet the composition of the particular material to be cut can be regarded as invention. Certainly is this so in the light of the prior art patents which have been referred to.

■ I conclude therefore that the five process claims in suit are void for want of invention. That leaves for consideration the product claims. Claims 16 and 17 read:

"16. A piece of fabric composed at least in part of thermoplastic derivatives of cellulose having an edge which has been sealed against fraying by fusion.

"17. A piece of fabric composed at least in part of cellulose acetate having an edge which has been sealed against fraying by fusion."

■ Here the question is whether cutting an old fabric in a manner known to the art produces a new patentable product. The product produced as the necessary result of the process described in the Fargo patent is a fabric coated and impregnated with a fusible composition of cellulose or the like. As such it negatives the novelty of Claims 16 and 17.

■ The remaining claim is Claim 12 and reads: "12. A piece of fabric containing thermoplastic derivatives of cellulose having a cut edge that does not ravel or fray, said edge being unhemmed and free ·from a woven selvedge, which edge has been at least partially liquefied and then permitted to solidify."

This claim in terms differs from Claims 16 and 17 but in meaning must be regarded as substantially the same as defining a fabric containing thermoplastic derivatives of cellulose, the edge of which has been at least partly liquefied and then permitted to solidify. Such an edge would be the same as that defined in Claims 16 and 17. This claim likewise is thus met by the disclosure in the Fargo patent.

■ It is perhaps unnecessary to consider the remaining defense of unclean hands beyond saying that it is not tenable against this plaintiff on the basis of the cases cited; Carbice Corporation v. American Patents Development Corp., 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819; Leitch Manufacturing Co. v. Barber, 302 U.S. 458, 58 S.Ct. 288, 82 L.Ed. 371; Philad v. Lechler Laboratories, 2 Cir., 107 F.2d 747. It is asserted that the owner of a patent loses the right to enforce it when it appears that the patent was used to create a limited monopoly in something different from that which was claimed as the invention of the patent. These authorities make no such broad holding. Nor is there here shown any fraud or deceit, conditions on which the holding was predicated in Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 54 S.Ct. 146, 78 L.Ed. 293. In the present case it appears that the main business of the plaintiff is to sell cellulose acetate yarn. It granted licenses under the patent in suit to three ribbon cutters under terms which exact a royalty from the licensee, the amount of which is dependent upon the quantity of cellulose acetate fabric that is cut, and provides for· a higher rate of royalty if the fabric cut by the licensee is made of yarn not produced by the plaintiff corporation. The record fails to show that the defendant has been prejudiced by any such preferential rate. The defendant is not a licensee, nor is the defendant charged here with contributory infringement. In this case the defendant is charged with direct infringement in dealing not with unpatented process or product, but on the contrary with those asserted to be covered by the patent in suit.

However, in view of the discussion relating to validity the complaint will be dismissed.

Submit findings of fact and conclusions of law in conformity with the foregoing opinion.