**MERCOID CORPORATION v. MINNEAPOLIS–HONEYWELL REGULATOR CO.**
(two cases).

**Nos. 8019, 8020.**

Circuit Court of Appeals, Seventh Circuit.

Dec. 23, 1942.

Rehearing Denied March 27, 1943.

W. P. Bair and Will Freeman, both of Chicago, Ill., for appellant-appellee.

Langdon Moore and L. Kerans Moore, both of Chicago, Ill., for appellee-appellant.

Before SPARKS, MAJOR and MINTON, Circuit Judges.

SPARKS, Circuit Judge.

In cause No. 8019, the Mercoid Corporation (hereafter referred to as Mercoid) asked for a declaratory judgment holding United States Patent No. 1,813,732 to Freeman, owned by Minneapolis-Honeywell Regulator Company (hereafter referred to as Honeywell) void and not infringed, and that that patent was being used to extend the patent monopoly beyond the bounds of its claims in violation of the Anti-Trust laws. In cause No. 8020, Honeywell, before it was notified of Mercoid's suit, charged Mercoid with infringement of claims 1, 4, 6 and 9 of the Freeman patent, by its sale of Mercoid's Combination Fan Limit Control with wiring diagrams showing how to install it. The patent was issued on July 7, 1931, upon an application filed January 16, 1931, and assigned to Honeywell.

Honeywell, answering Mercoid's complaint, averred validity and infringement by Mercoid, and denied any alleged improper use of its patent. Mercoid, in answering Honeywell's complaint, denied validity and infringement, alleged the same improper use of the patent, and counterclaimed for damages for violation of the Anti-Trust laws.

The cases were consolidated for trial before the District Court, which held the patent valid and infringed, and that Honeywell was not guilty of laches, but further held that Honeywell could not maintain á suit for infringement because it had used the patent to control the sales of articles beyond its scope. The court disallowed damages against Honeywell for violation of the Anti-Trust laws and dismissed both complaints. From this decree both parties have appealed.

Freeman's combination relates to control apparatus for use with a hot air furnace. Its principal object is to provide a control for the rate of combustion and for the operation of an accelerating device, such as a fan, blower or similar apparatus, used for accelerating the rate of supply of the heat-conducting medium, such as air, to be heated by a furnace, said control being such as to permit the operation of the

accelerating device and to check combustion in case the furnace becomes overheated, and such as to interrupt the operation of such accelerating device while increasing the rate of combustion if the furnace has not been heated above a predetermined temperature. In addition, a control feature is added by means of which both the combustion and the supply of the heat-conducting medium are checked when the temperature of the room or object to be heated is above a predetermined degree.

Mercoid's device, which was held to infringe the patent, is referred to by the parties as M-80. The District Court wrote an opinion in these cases (Mercoid Corporation v. Minneapolis-Honeywell Regulator Co., 43 F.Supp. 878) in which it set forth the patent claims in issue and discussed the issues including prior art, prior uses and laches, and they will not be repeated here. It is sufficient to say that the finding could not well have been otherwise under the evidence presented, and we approve that court's reasoning and conclusions with respect to validity, infringement and laches. This brings us to what we regard as the vital questions in this case,—whether Honeywell has so misused the Freeman system of furnace control as to bar its suit for infringement, and whether its misuse, if any, constitutes a violation of the Anti-Trust laws. Both the answer in bar and the charge of violation of the Anti-Trust laws are based upon the same allegations of misuser.

The District Court based its decision as to Honeywell's misuse upon the rule referred to in Morton Salt Co. v. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363. That rule, which is equitable in its nature and of general application, asserts that courts, and especially courts of equity, may appropriately withhold their aid where the plaintiff is using the right asserted contrary to the public interest. The Morton case involved a patented mechanism for depositing salt tablets, a device said to be useful in the canning industry for adding predetermined amounts of salt in tablet form to the contents of the cans. The patent was on the mechanism, not on the salt nor on its configuration. Salt is an article of commerce, quite generally used from time immemorial. It is unpatented and is not an element of the patent upon which Morton relied. However, Morton sought to compel the purchasers of its patented mechanism to use only the salt purchased from it, which was in no sense a part of the patent. The Supreme Court held that Morton could not do this because to do so would constitute a contributing factor in thwarting the public policy underlying the grant of the patent. The Court stated quite generally that a patent could not be used as a means of restraining competition with the patentee's sale of an unpatented *product*. It is to be noted that the Court carefully refrained from using the word *element* instead of the word *product,* because in that case salt was not an element of that patent, nor did that patent cover a product. The salt tablets in no sense could be considered as the "advance in the art" in the patent there in suit.

The patent here covers a furnace control system having a combustion control apparatus, a fan to force hot air from the furnace to the rooms, a thermostatic apparatus for controlling the combustion control apparatus and fan. It discloses a hand-fired furnace with dampers and also a furnace with a stoker.

With respect to the stoker-operated furnace, a room thermostat normally starts the stoker. There is also a thermostat which breaks the stoker circuit when the air in the furnace reaches a predetermined high temperature, even though the room thermostat is calling for heat. This is for the purpose of preventing unsafe overheated conditions. Another thermostat is also placed in the furnace which does not permit the fan to start until the air in the furnace reaches a certain heat. It then starts the fan which continues to run so long as the furnace is hot and the room thermostat calls for heat, even if the stoker is stopped by the limit switch.

Honeywell urges that Freeman's advance in the art is the arrangement of thermostat switches, subject to furnace heat, in connection with other parts, to secure a sequence of operations whereby combustion is stopped before excessive heat is reached in the furnace, but the fan continues to run and take the heated air from the furnace and deliver it to the rooms. The claims, it will be noticed, include the necessary combustion control and fan, and, in some cases, the room thermostat, together with the thermostatic fan and limit switch connected to secure sequence of operations.

Mercoid's M-80 is a combination fan and limit control. It has two thermostatically operated switches in a single casing so arranged as to permit the fan to operate when the limit switch has opened the circuit of the stoker motor for stopping combustion when a dangerous and excessive temperature has arisen in the furnace. It provides for the sequence of operations which is the precise essence of Freeman's advance in the art. With each M-80, Mercoid provides certain wiring diagrams for installation. The accused device has no other use than for accomplishing the sequence of operations of the Freeman patent. Mercoid's expert testified that when installed according to Mercoid's diagram it infringed the Freeman patent. The District Court was warranted in relying on this evidence and we are convinced that it is true.

█ Honeywell has granted licenses to others and offered a license to Mercoid on the same terms and conditions, which was refused. Mercoid contends that these licenses involve use of the patent to monopolize the sale and control of devices not covered by the patent and this, it urges, bars Honeywell's right to maintain an infringement suit and also violates the Anti-Trust laws. These licenses call for payment of a royalty on the defined combination furnace control which embodies the essence of Freeman's patent. Each of such controls brings about one complete Freeman installation, and the record does not disclose any attempt on the part of Honeywell to collect a royalty on such control unless it is used or attempted to be used in a system which would infringe the Freeman combination. In this we think there is no attempt to illegally monopolize the sale of the Honeywell control unless it is used or intended to be used in the Honeywell system.

All licenses issued by Honeywell are the same in so far as the issues before us are concerned. Section 1 of the license here involved is as follows: "As used in this agreement, the expression 'Combination Furnace Control' shall mean a unitary structure including at least a switching means for controlling not less than two circuits and operated by temperature responsive means responsive to the temperature of a heating device or the fluid medium heated thereby, one of said circuits being established on temperature rise and another being established on temperature fall, the structure having permanent internal wiring connecting the switching means to terminals for the connection of external wires thereto, the internal wiring being so arranged that when the terminals are connected by external wires to a heat controlling mechanism or a combustion controlling mechanism for the heating device and to a means for controlling the circulation of the fluid medium heated thereby, such structure, when used as intended, embodies the system disclosed in and claimed by the Freeman patent * * *. It being understood that this definition is not intended so far as said Freeman Patent is involved to limit the combinations in or with which said 'Combination Furnace Control' may be used by Licensee or its vendees."

Mercoid contends that these licenses involve use of the patent to monopolize the sale of the control which of itself is not covered by the patent, and this it urges bars Honeywell's right to maintain an infringement suit, and also violates the Anti-Trust laws. In other words, it argues that Honeywell is guilty of inequitable conduct and of violating the Anti-Trust laws because it does not sell Freeman's systems, but sells unpatented controls which are not within the scope of the Freeman patent. This record discloses that the only Honeywell control which gets protection as a result of the licenses is the control usable only for a Freeman type installation, which of course embodies the Freeman "advance in the art." It further discloses that Honeywell never accused any one under the Freeman patent on account of the sale of standard controls, which might be used with the Freeman installation, or might be used with some other installation. So far as we have been able to discover from this record, all the conduct of Honeywell which is here complained of has been solely directed toward the protection of the Freeman patent. The patent laws permit such conduct and the Anti-Trust laws do not forbid it. Bement & Sons v. National Harrow Co., 186 U.S. 70, 22 S.Ct. 747, 46 L.Ed. 1058; United States v. United Shoe Machinery Co., 247 U.S. 32, 38 S.Ct. 473, 62 L.Ed. 968; United Shoe Machinery Co. v. U. S., 258 U.S. 451, 42 S.Ct. 363, 66 L.Ed. 708.

█ It has long been held that the owner of a patent may restrain contributory infringement, if within his rights under the patent law, providing his conduct is otherwise proper. Wallace v. Holmes, 29 Fed.Cas. page 74, No. 17,100, 9 Blatchf.

65. It has been held further that one is an infringer if he makes and sells an unpatented element of a combination which serves to distinguish the invention, that is to say, to make the advance upon the prior art, knowing that it is to go into the patented combination. Leeds & Catlin v. Victor Co., 213 U.S. 325, 29 S.Ct. 503, 53 L.Ed. 816.

In support of its contention to the contrary, Mercoid relies upon Carbice Corp. v. American Patents Corp., 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819, and Leitch v. Barber, 302 U.S. 458, 58 S.Ct. 288, 82 L. Ed. 371, and kindred cases. In the Carbice case, the Supreme Court said that it was wholly unlike the Leeds & Catlin case, and in the Leitch case, the Court said that there was nothing in the Leeds & Catlin case that limited the rule in the Carbice case. Other cases upon which Mercoid relies are Motion Picture Patents Co. v. Universal Film Co., 243 U.S. 502, 37 S.Ct. 416, 61 L.Ed. 871, L.R.A. 1917E, 1187, Ann.Cas.1918A, 959; Morton Salt Co. v. Suppiger Co., supra; B. B. Chemical Co. v. Ellis, 314 U.S. 495, 62 S.Ct. 406, 86 L.Ed. 367; American Lecithin Co. v. Warfield Co., 7 Cir., 105 F.2d 207; and Philad Co. v. Lechler Laboratories, 2 Cir., 107 F.2d 747. In all these cases the objectionable conduct was directed toward the sale of something which was not the advance in the art and did not necessarily measure or mark the use covered by the patent.

We find no evidence in this case that Honeywell by its conduct or by its license required any one to buy any element or elements of the patent from Honeywell or its licensees, but all of its conduct complained of was directed to the protection of Freeman's advance in the art. This we think was well within its rights and we find no decision to the contrary. Since it has not exceeded any of its rights under the patent, on the same facts it cannot be said that it has violated the Anti-Trust laws.

The decree of the District Court is affirmed in all respects, except as to its decree that Honeywell has been so using its Freeman patent as to tend to create a monopoly in an unpatented device, and in dismissing Honeywell's complaint, and in the assessment of costs. In these respects the decree is reversed and the cause is remanded to the District Court for further proceedings not inconsistent with this opinion.