**UNIROYAL, INC., Plaintiff,**

v.

**DALY–HERRING COMPANY, Kinston, N. C., Defendant.**

**Civ. A. No. 766.**

United States District Court
E. D. North Carolina,
New Bern Division.

June 27, 1968.

John H. Anderson, J. K. Dorsett, Willis Smith, Jr., of Smith, Leach, Anderson & Dorsett, Raleigh, N. C., for plaintiff.

Fitzhugh E. Wallace, Jr., of Wallace, Langley & Barwick, Kinston, N. C., Howard E. Manning, of Manning, Fulton & Skinner, Raleigh, N. C., Morgan, Finnegan, Durham & Pine, New York City, for defendant.

## OPINION IN SUPPORT OF ORDER

LARKINS, District Judge.

This cause comes before the Court as a civil action in which plaintiff claims that the defendant has infringed the plaintiff's United States Letters Patent No. 2,614,916. A verified complaint was filed herein on June 13, 1968.

On the same day, June 13, this Court in chambers issued a temporary restraining order upon the motion of plaintiff which prohibited the defendant for ten days from selling or offering for sale or distributing the product "Sucker Stuff" to farmers.

Plaintiff now moves for a preliminary injunction to enjoin defendant from selling or offering to sell or distributing the product "Sucker Stuff" to farmers.

According to the complaint, plaintiff, Uniroyal, Inc., is a New Jersey corporation with offices in New York and is the owner of the patent in suit. The alleged invention of the patent is an agricultural chemical product which, the complaint alleges, is sold for the prevention of the growth of suckers on tobacco plants. The title of the invention is "Agricultural Chemical Compositions Comprising 1, 2 Dihydropyridazine—3, 6 Dione and its Salts."

The complaint alleges that defendant is infringing the patent by using and selling the alleged invention, that validity of the patent has been unquestioned by the public, and that continued sale by

defendant will do irreparable harm to the plaintiff. The application for the *ex parte* temporary restraining order identified plaintiff's product as MH30.

The Court finds from an examination of the pleadings, the affidavits, the exhibits, and statements of counsel offered in open court, and for the purposes of this motion only that:

The patent in suit was issued on October 21, 1952. It has not been adjudicated.

Defendant, Daly-Herring Co., is a North Carolina corporation. It conducts a business of selling agricultural chemicals to farmers and growers in Kinston, North Carolina.

According to the affidavits of defendant's president, Otha E. Herring, defendant acted as distributor of MH30 for plaintiff from about 1959 to 1964. Plaintiff cut off defendant in 1964.

At the time of the cut off, plaintiff had approximately seven distributors in the North Carolina area. No other distributor was cut off. Since 1965, plaintiff has added about ten more distributors in the area. (Herring supplemental aff. par. 3)

Defendant retained some of its customers by buying MH30 in the open market at a premium price. Beginning about two months ago, defendant began purchase of the accused product, "Sucker Stuff", from a manufacturer called The Ansul Company located in Wisconsin. (Herring main aff. pars. 5 and 7)

The manufacturer of "Sucker Stuff", The Ansul Company, commenced an action on May 31, 1968, Civil Action No. 68 Civ. 244, against Uniroyal, Inc., plaintiff herein, in the Southern District of New York to have the same patent in suit number 2,614,916 declared invalid, unenforceable and not infringed by the same product "Sucker Stuff". (Diaz affidavit paragraphs 3, 5, 8–10 and New York complaint attached as Exhibit D thereto).

When plaintiff applied for the temporary restraining order in this Court thirteen days later, on June 13, plaintiff did not give notice to its former distributor, defendant Daly-Herring, nor did plaintiff give notice through Ansul's counsel in the New York litigation. Plaintiff also did not certify in writing any efforts made to give notice or why notice should not be required. In addition, plaintiff did not advise this Court of the prior challenge to the patent in suit and to its infringement by the same product "Sucker Stuff", pending in the New York Court. (tr. 67–68, 116–117 Herring aff. par. 8.)

At the hearing on plaintiff's motion for preliminary injunction defendant asserted, and it was not denied by plaintiff, that there are at least two additional distributors of "Sucker Stuff" in eastern North Carolina as well as other distributors in the rest of the country (transcript pages 15–18, 41–43, 94–97). Plaintiff, however, sought a temporary restraining order only with respect to defendant Daly-Herring. The other distributors have not been made parties herein and have been free to sell "Sucker Stuff".

In support of its motion for preliminary injunction, plaintiff has submitted affidavits, *inter alia*, of J. C. Whitehurst and S. C. Peele, MH30 dealers, and Thomas D. Ramsey, plaintiff's eastern sales manager. They assert that defendant is selling the product "Sucker Stuff" to tobacco farmers for sucker control, that the label shows it to have the same active ingredient as plaintiff's MH30 product, that the retail selling season to tobacco farmers for sucker control chemicals is from approximately June 15 to July 15 of each year in North Carolina, that MH30 has been used throughout the South by tobacco farmers as a sucker growth control chemical since 1952, and that there had been no attempt to infringe upon the patent until "Sucker Stuff" appeared.

Defendant's opposition affidavits assert that the patent in suit has never been adjudicated (Diaz affidavit pars. 11–13), that there is no possibility of infringing claims 3–6 because "Sucker Stuff" does not contain a powdered solid

carrier or mineral silicate as required by those claims (Durham aff. par. 11), there is no possibility of infringing claims 8–11 because claims 8 and 9 are directed to treatment of lawns and claims 10 and 11 to flowering or fruiting of plants (Durham aff. par. 12), that there is no possibility of infringing claim 2 because it requires an aqueous suspension whereas "Sucker Stuff" is a true solution (Durham aff. par. 13), and that claim 14 cannot be infringed because it requires a triethanolamine salt whereas "Sucker Stuff" does not have it (Durham aff. par. 14).

■ There is no word in the patent concerning tobacco. With reasonable interpretation, defendant contends, none of the patent claims could be held to be inclusive of the concept of the treatment of tobacco. (Durham aff. par. 5). Defendant's position is that the patent does not cover either plaintiff's MH30 or "Sucker Stuff" in the treatment of tobacco. (tr. 55–57).[1]

Defendant's affidavits also assert invalidity of all the claims for lack of novelty and for obviousness over prior art not cited by the Patent Office. This prior art shows, according to defendant, that the maleic hydrazide of the patent is an ancient chemical and triethanolamine is a well known wetting agent in agricultural use. (Durham aff. par. 16–17, 19–24).

■ There is no presumption of patent validity over prior art not cited by the Patent Office. Heyl & Patterson, Inc. v. McDowell, 317 F.2d 719, 722 (4th Cir. 1963).

The Durham affidavit (par. 25) also shows that plaintiff's label for its product MH30 contains notice of not one U. S. patent but 4 U.S. patents, i. e. not only 2,614,916 in suit but also 2,575,954; 2,614,917 and 2,805,926. The Durham affidavit makes clear that three of the patents could have no bearing on MH30 as sold by plaintiff. Defendant contends that such mismarking is unlawful under the patent marking statute, 35 U. S.C. § 292, and would render plaintiff's hands unclean with respect to the very subject matter here in controversy. In such event, defendant contends, plaintiff is entitled to neither preliminary nor final relief.

At the hearing, plaintiff's counsel admitted the fact of mismarking but contended that it was lawful because one of the four patents applied to the MH30 product (tr. 107–108).

The Diaz affidavit submitted by defendant indicates that the patentee Uniroyal has refused to grant licenses under the process claims of the patent (pars. 17–19). See also pars. 12–18 of the Shockey affidavit. Thus, defendant contends no one can practice the process invention except with chemicals purchased from Uniroyal. Defendant contends that such a "tie-in" has been declared unlawful and renders the patent unenforceable as a whole in accordance with the decisions of the Supreme Court of the United States and the various Courts of Appeals. See Leitch Manufacturing Co. v. Barber Co., 302 U.S. 458, 58 S.Ct. 288, 82 L.Ed. 371 (1938).

The defenses raised against the patent in suit are serious and substantive. The issues go not only to the invalidity of the patent, but also to non-infringement and unenforceability.

Although it may be true, as plaintiff contends, that widespread public acquiescence may be considered the equivalent of prior adjudication, plaintiff's evidence falls far short of the "considerable degree of acquiescence" demonstrated in W. A. Shaeffer Pen Co. v. Worth Featherweight Pen Co., 41 F.2d 820, 821 (S. D.N.Y.1930), upon which plaintiff relies. The evidence suggests that MH30, the product, may have enjoyed some commercial acceptance as a chemical control

---

1. "The claims of a patent must always be explained by and read in connection with the specification and in the light of definitions and admissions made by the applicant in the proceedings in the Patent Office." Westinghouse Electric Corp. v. Hanovia Chem. & Mfg. Co., 179 F.2d 293, 296–297 (3rd Cir. 1949).

for tobacco but, as noted above, there is no evidence that the public investigated the validity of the patent itself or any of the defenses thereto until The Ansul Company did so several months ago. Ansul then filed the New York suit to have the patent declared invalid, not enforceable and not infringed by "Sucker Stuff". Moreover, tobacco does not appear in the patent and whether the patent covers tobacco treatment by MH30 or "Sucker Stuff" is a basic issue of fact to be determined on the merits. It is fundamental that infringement by the accused "Sucker Stuff" depends not upon what plaintiff manufactures, but upon what it has patented.

"It is axiomatic in the patent law that infringement depends, not upon what is manufactured or sold by the patentee, but upon what he has patented." Walker on Patents, page 1681 (Deller's ed. 1937).

The latest patent decision of the Supreme Court of the United States [2] emphasizes the high standards which the courts are to apply before sustaining and enforcing any patent:

"While the ultimate question of patent validity is one of law, Great A. & P. Tea Co. v. Supermarket Equipment Corp., supra, 340 U.S. [147] at 155, 71 S.Ct. [127] at 131, [95 L.Ed. 162] the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined."

"We believe that strict observance of the requirements laid down here will result in that uniformity and definiteness which Congress called for in the 1952 Act.

\*    \*    \*    \*    \*    \*

"In this connection we note that the Patent Office is confronted with a most difficult task. Almost 100,000 applications for patents are filed each year. Of these, about 50,000 are granted and the backlog now runs well over 200,000. 1965 Annual Report of the Commissioner of Patents 13–14. This is itself a compelling reason for the Commissioner to strictly adhere to the 1952 Act as interpreted here. This would, we believe, not only expedite disposition but bring almost a closer concurrence between administrative and judicial precedent.

Although we conclude here that the inquiry which the Patent Office and the courts must make as to patentability must be beamed with greater intensity on the requirements of § 103, it bears repeating that we find no change in the general strictness with which the overall test is to be applied."

█ The patent in suit presents serious substantive questions of fact and law concerning invalidity, unenforceability and non-infringement, which would require careful scrutiny at a trial on the merits.

A mere reading of the patent itself suggests the difficulties in dealing with such issues in the present preliminary summary type hearing. This Court should have the benefit of expert witness evidence, tests and other scientific aids, that can only be had at a plenary trial on the merits.

In such circumstances, the restraining order should be vacated, and the preliminary injunction should be denied, for such reason alone:

"We think that the defense interposed here [invalidity] makes out a case of unwise use of the discretion of the District Judge in granting the preliminary injunction, and, without

---

2. Graham v. John Deere Co., 383 U.S. 1, 17–19, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

passing upon the sufficiency of the defenses interposed, we think that the demands of justice require that the injunction be dissolved and the merits of the defenses be passed upon at final hearing. Order reversed." George Cutter Co. v. Metropolitan Electric, 275 F. 158, 164 (2nd Cir. 1921).

As stated in Henis v. Compania Agricola De Guatemala, 116 F.Supp. 223, 224–225 (D.Del.1953), aff'd 210 F.2d 950 (3d Cir. 1954):

> "A mere reading of the affidavits reveals sharp issue of fact between the parties. The pleadings also suggest difficult questions of law are in dispute. The relief which plaintiffs, here, seek, calls for one of the extraordinary equitable remedies. It is established law of this District and Circuit that a preliminary injunction will not issue under such circumstances."

As Judge Learned Hand put it in Simson Brothers v. Blanchard, 22 F.2d 498, 499 (2nd Cir. 1927):

> "We have often said that an injunction pendente lite in a patent suit should not go except when the patent is beyond question valid and infringed."

The Ninth Circuit has recently stated the rule in similar terms:

> "Generally speaking, no preliminary injunction will be granted unless the patent is valid and infringed beyond question and the record conclusively proves the defense is sham." Pacific Cage & Screen Co. v. Continental Cage, 259 F.2d 87, 88 (9th Cir. 1958)

■ Plaintiff claims that it, and its MH30 distributors, will suffer a reduction in sales if the preliminary injunction is not granted (tr. 46–47). Plaintiff has not explained, however, how restraint of defendant (a small local company) would be of any practical benefit while other distributors simultaneously continue to sell "Sucker Stuff" throughout the country. Moreover, any reduction in sales caused by defendant can be compensated by money damages under 35 U.S.C. § 284. The affidavit of Mr. Herring (pars. 2–3) demonstrates that defendant is financially responsible. Defendant has offered to post a bond in an amount equal to the bond posted by plaintiff in connection with the temporary restraining order. At the hearing plaintiff did not question defendant's financial responsibility in light of knowledge that defendant was indemnified by The Ansul Company (tr. 39, 64).

On the other hand, substantial irreparable harm would be suffered by defendant if a preliminary injunction is granted herein. Defendant would necessarily lose its business in "Sucker Stuff" and related products. It would lose the goodwill of its customers. Harm also would be suffered by some of defendant's employees and staff who would have to be discharged (Herring aff. pars. 2, 6, 9–11).

In such circumstances, this Court should exercise its discretion by refusing the requested injunction:

> "As vigorously as plaintiff was claiming the right by injunction to destroy defendants' new business in favor of his own, defendants were claiming the right to freedom from such destruction. To have granted a preliminary injunction in the case then, would not have been to preserve the status quo pending suit, it would have been, by putting defendants out of business, to destroy it.

> "The grant of an interlocutory injunction in such a case would have been not the exercise, but the abuse, of discretion." Hoeme v. Jeoffroy, 100 F.2d 225 (5th Cir. 1938).

■ The affidavits of Shockey (pars. 13–19) and Diaz (pars. 16–19) establish the fact that plaintiff has known of the controversy at least since March, 1968. At that time the manufacturer, The Ansul Company, disclosed to the plaintiff, Uniroyal, that it intended to enter the field and sell the "Sucker Stuff" type of product to distributors throughout the United States. Defendant is one of such distributors.

Plaintiff did nothing with this information until it sought the temporary restraining order against defendant herein two and one-half months later.

In the meantime, The Ansul Company had filed the suit for declaratory judgment of patent invalidity and non-infringement against plaintiff in the Southern District of New York in late May. Plaintiff could have presented its claim for patent infringement in that suit by way of counterclaim.

Such facts give rise to the inference that plaintiff sued defendant Daly-Herring herein, and applied for the temporary restraining order herein on June 13, as a matter of timing. Defendant's exposure to harm and injury on June 13 was maximum in light of the growing season local to the North Carolina area. On such ground alone, the Court's discretion should be exercised by refusing to grant the preliminary injunction. In Ney Mfg. Co. v. Superior Drill Co., 56 F. 152, 154 (C.C.S.D.Ohio 1893), the court denied the preliminary injunction, stating:

"A second reason for overruling this motion is that the complainant waited nearly two months after filing its bill, and until it must have known that the defendant would be stocked up with a full supply for the year's business, which is practically over at the close of the haymaking season, and then presented its motion for an injunction. The courts of the United States are vested with power to grant injunctions in patent causes according to the course and principles of equity. It is not according to equity for a complainant to delay the assertion of his right to an injunction until the time when it will most embarrass and injure the respondent. Such a proceeding savors of a disposition to use the right of a patentee to oppress an alleged infringer, or to force him into a position where he may be compelled to incur heavy losses or to yield to hard demands. The granting or withholding of a preliminary injunction is within the proper discretion of the court. It will be withheld when apparently sought for the purpose of obtaining an undue advantage. It has been withheld when, in the opinion of the court, it would be used for the purpose of creating mischief, (Neilson v. Thompson, 1 Webst.Pat.Cas. 275;) or when it would give the complainant the means of coercing a compromise, (Parker v. Sears, 1 Fish.Pat.Cas. 93;) and so I think it should be here, where the result of granting it now would do more harm to the respondents than good to the complainant, whereas, if the application had been made promptly, special harm to the respondents would have been avoided."

■ Finally, the Court notes that the same patent issues are presented in the prior filed action pending in the U.S. District Court for the Southern District of New York between plaintiff and the manufacturer of "Sucker Stuff". The New York Court has before it the entire controversy between the principal parties in interest. If plaintiff here is right and ultimately prevails against the manufacturer, the New York Court can restrain the manufacturer with respect to the product. The accused product would be dried up at its source. On the other hand, if plaintiff here is unsuccessful, and its patent is declared invalid or not infringed in New York, then that judgment would be *res judicata* as to all suits or claims against the accused product in the hands of all customers.[3]

■ The present case on the other hand is a customer suit. The present case is duplicative of and represents only a part of the entire controversy before the New York Court. This is still another reason for not applying the extraordinary remedy of preliminary injunction against the single customer

3. Kessler v. Eldred, 206 U.S. 285, 27 S.Ct. 611, 51 L.Ed. 1065 (1907) and General Chemical Co. v. Standard Wholesale, Phosphate & Acid Works, Inc., 101 F.2d 178 (4th Cir. 1939).

sued as the only defendant in the present case. (tr. 118–119)

The motion for preliminary injunction should be and is denied and the temporary restraining order is vacated.

This memorandum opinion is not determinative of the basic merits of this controversy either as to patent validity, infringement or enforceability.