## FREEMAN et al. v. ALTVATER et al.

No. 12241.

Circuit Court of Appeals, Eighth Circuit.

July 15, 1942.

Rehearing Denied Aug. 24, 1942.

Order Denying Rehearing Vacated

Sept. 8, 1942.

See 130 F.2d 763.

---

Marston Allen, of Cincinnati, Ohio (Allen & Allen, of Cincinnati, Ohio, Bruninga & Sutherland and John H. Sutherland, all of St. Louis, Mo., on the brief), for appellants.

Edmund C. Rogers and Lawrence C. Kingsland, both of St. Louis, Mo. (Estill E. Ezell and Kingsland, Rogers & Ezell, all of St. Louis, Mo., on the brief), for appellees.

Before GARDNER, WOODROUGH, and JOHNSEN, Circuit Judges.

GARDNER, Circuit Judge.

This was a suit brought by appellants as plaintiffs against appellees, seeking specific enforcement of a license agreement under reissue United States patent No. 20,202, issued to Benjamin W. Freeman December 8, 1936, upon an application filed October 30, 1936, for a cut-out machine for shoe uppers, and to enjoin defendants from making and selling flat bed dies and masks, more particularly the so-called clamp gauge dies and elevated gauge dies. An accounting was also sought. The parties will be referred to as they appeared in the trial court.

By supplemental bill plaintiffs alleged that since the filing of their original bill the subject matter of the suit became covered by reissue patent 20,202, issued on the surrender of its patent No. 1,681,033, and that the reissue patent had been submitted to defendants and accepted by them as a substitute for the original patent No. 1,681,033. Defendants denied the validity of the reissue patent, denied that they had accepted it as a substitute for the original patent, denied that the accused dies manufactured by them infringed the reissue patent, pleaded that by disclaimer plaintiffs had been evicted from the monopoly granted by their original patent, thus terminating the contract between plaintiffs and defendants. They pleaded affirmatively

that plaintiff Benjamin W. Freeman filed a suit in the United States District Court for the District of Massachusetts, against Premier Machine Company, Freeman v. Premier Mach. Co., 11 F.Supp. 761, alleging infringement of twenty-six claims of plaintiffs' original patent; that such proceedings were had in said suit that the United States Circuit Court of Appeals for the First Circuit adjudged that twenty-three of the twenty-six claims, including claims 13 and 17 herein sued upon, were held invalid, and that three claims, 18, 70 and 81, were held valid but restricted to certain limited scope; that following the decision in Premier Machine Co. v. Freeman, 1 Cir., 84 F.2d 425, and by reason thereof, plaintiff Benjamin W. Freeman filed a disclaimer in the United States Patent Office. By amendment during the trial defendants pleaded that the leases and licenses of plaintiffs were an attempt to monopolize unpatented dies and machines, thus precluding them from maintaining this suit because of their unclean hands.

On the trial on the issue of specific performance, plaintiffs limited their charges to the complaint that defendants had sold certain flat bed dies coming within claim 6 of the reissue patent. The court made elaborate and detailed findings of fact and conclusions of law, finding, among other things, that the accused devices consisting of certain flat bed cutting dies for use in forming decorative patterns in shoe upper material, did not infringe plaintiffs' reissue patent; that the decision in the Premier case evicted Freeman from any claim to a patent monopoly on a machine and any claim to a monopoly on the so-called anvil type of die holder, and that the reissue patent was devoid of patentable subject matter; that the decision limited claim 6 to a clamping mask and die with a window shaped to correspond to the outline of the stitched pattern of the perforations to be made, or corresponding in size and shape to the pattern of the decoration to be perforated, and that the mere use of a window in a clamping plate was not invention, nor was the use of a straight or curved edge on a clamp for gauging purposes invention; that plaintiffs had entered into license and lease agreements involving the patent in suit, which attempted to monopolize and limit competition in unpatented dies and masks, and that such contracts were in existence at the time of the trial; that the original contract between the parties to this litigation was based upon the original Freeman patent No. 1,681,033; that said patent was surrendered and expired December 8, 1936, thus terminating the original contract; that defendants, since the date of reissue have paid certain royalties upon the original patent; that they are under an injunction in the first Freeman v. Altvater suit to pay such royalties, but that they protested payment in correspondence with plaintiffs and by numerous legal actions, so that they have not indicated any acceptance of the reissue to form a new contract; that Freeman's disclaimer of all claims held invalid in the Premier suit constituted an abandonment of the subject matter of such claims and he had retained claims not definitely distinguishable from the claims held invalid; that the reissue did not accord with the findings of the court in the Premier case, but were in disregard of the disclaimer.

Based on its findings and conclusions, the court adjudged that the accused devices did not infringe the reissue patent; that the license contract between the parties was terminated December 8, 1936, the date of the reissue patent, and that since that time no new contract had been entered into; that Freeman was evicted from the monopoly of his patent by the decision in Premier Mach. Co. v. Freeman that the original patent became invalid upon Freeman's disclaimer; that the complaint and supplemental complaint be dismissed. Other facts will appear in the course of the opinion.

On appeal plaintiffs seek reversal on substantially the following grounds: (1) the acts of defendants were such as to revive the contract in suit as of December, 1936, after the reissue patent was tendered by plaintiffs to defendants; (2) defendants, being licensees, can not attack the validity of the patents under which they are licensed; (3) in considering infringement by the licensees operating under the protection of the patent, the construction of the patent claims should be generous in order to result in the licensor being recompensed for what he has given up; (4) the reissue patent is valid; (5) the doctrine of unclean hands is not applicable to plaintiffs.

Plaintiffs brought a similar suit against defendants in 1930, asking specific performance of a contract, an injunction against infringement, and an accounting. The trial court denied relief and on appeal

we reversed. Freeman v. Altvater, 8 Cir., 66 F.2d 506, 507. Freeman's original patent No. 1,681,033, issued April 14, 1928, covered a cut-out machine for shoe uppers. In January, 1929, plaintiffs entered into a license contract with the defendants, which granted defendants the right to make and sell within a designated territory, upon payment of royalties, parts known as dies, anvils and masks of the patented machine and permitted them to repair but not to rebuild the machines they had already sold. Within a few days after entering into the license contract, the defendant Altvater placed upon the market a machine known as the "Model T," for which he was granted patent No. 1,807,952 on June 2, 1931, his application being dated January 25, 1929. This court held that defendant Altvater's Model T machine infringed plaintiffs' patented device. Freeman v. Altvater, supra. In that case it was said that, "The important question in this case is whether the Model T machine infringes the Freeman patent. The validity of the patent is not in question, since the defendants, being licensees, are estopped to assert its invalidity." The dies now accused as infringing plaintiffs' patent were not before the court in the prior suit. In the accounting ordered in that suit, plaintiffs presented to the special master these flat bed dies, claiming that they came within the decree. The master, however, held that they were not covered by the decree and consequently plaintiffs brought this suit. In the meantime, the Premier case was decided, resulting in a finding that many of the claims of the original Freeman patent were void. Plaintiffs then disclaimed as to the claims so adjudicated to be void and secured the reissue patent No. 20,202. Plaintiffs then wrote to defendants as their licensees under the prior patent, as follows:

"December 9, 1936.
"Western Supplies Company
"2920 Cass Avenue
"St. Louis, Missouri
"Gentlemen:

"We herewith enclose copy of Reissue Letters Patent No. Re. 20,202 and No. Re. 20,203. These, as you will note, are divisions of patent No. 1,681,033, which forms the basis of your license agreement.

"Re. 20,202 relates to dies with masks only, and Re. 20,203, states the invention of the anvil die as a part of a method of shoemaking, which was indicated as the nature of this invention in a recent court decision. A sale of an anvil die without a mask by you will carry with it the right to use it according to this method.

"As we view the matter, the patent situation under which you are licensed is improved by this change and applies to the same dies, and this letter is to advise you that your license will apply in the future to these Reissue patents, instead of the one recited in the license.

"Yours truly,
"The Louis G. Freeman Company
"Benj. W. Freeman"

To this letter defendants made no immediate reply but they continued to send reports of dies sold under the contract and paid the royalties due on the same basis as before and as required by the injunctional order in the original suit. In February, 1937, they requested a conference, due, they said, to complications arising from the result of the Premier Machine Co. suit and the reissues. Plaintiffs delayed reply to this letter for one month. Then counsel for plaintiff wrote counsel for defendants, asking them to come to Cincinnati for conference and stating that further steps in the accounting proceeding had been postponed pending the proposed conference. At that conference Altvater stated that defendants regarded the reissue patents invalid. Defendants then brought a suit against plaintiffs in the Federal Court for the Southern District of Ohio for a declaratory judgment, alleging the invalidity of the reissue patents; that Freeman's surrender of the original patent terminated the contract between the parties; that the reissue patent contained claims not distinguishable from the die claims declared invalid in the Premier case. The court, holding that no justiciable controversy existed and that the District Court of Missouri had jurisdiction of whatever controversy did exist, dismissed the bill, whereupon the case was taken to the Circuit Court of Appeals and the dismissal sustained. Western Supplies Co. v. Freeman, 6 Cir., 109 F.2d 693.

It is urged that the letter written by plaintiffs to defendants was an offer to enter into a new contractual relationship, modifying the old contract by substituting the reissue patents for the former patent and that payment and reports in apparent compliance with this offer constituted an acceptance. Plaintiffs concede that "upon the decision of the Premier case defendants had a right to cancel the contract."

This concession makes it unnecessary to consider the claim of the defendants that plaintiffs were evicted from the monopoly of their patent by the Premier decision, and that in consequence of that eviction the field previously protected by the monopoly of the patent became wide open, and hence, the consideration upon which their contract with defendants rested failed. Ross v. Fuller & Warren Co., C. C., 105 F. 510; Drackett Chemical Co. v. Chamberlain Co., 6 Cir., 63 F.2d 853; H. C. White Co. v. Morton E. Converse & Son Co., 2 Cir., 20 F.2d 311.

■ The burden of proof as to the existence of the alleged new contract was upon plaintiffs. The above quoted letter is relied upon as an offer. It should be observed that the letter first advises defendants that copy of the reissue letters patent are enclosed. The second paragraph makes some explanation with reference to the reissue patent, explaining why the reissue was divided into two patents, whereas the original was but one patent. It is then stated, presumably as an opinion, that, "A sale of an anvil die without a mask by you will carry with it the right to use it according to this method." It is then suggested, which suggestion we assume is also an opinion, that, "the patent situation under which you are licensed is improved by this change." Then follow the only words that could be construed as an offer: "this letter is to advise you that your license will apply in the future to these reissue patents, instead of the one recited in the license." This does not purport to be an offer. It purports to be a statement either of fact, of law, or of opinion. It calls for no answer, nor does it call for any act of acceptance; it calls for no new consideration. It is claimed that the payment of royalties was a performance or part performance, but as the royalties had habitually been paid under the old contract and pursuant to the injunctional order, and the offer in itself called for no payments of royalties, it can not be said that the performance was induced by this alleged proposal or offer, nor in fulfilment of any requirement contained therein. To be an acceptance it must have been induced by the proposal. Schmitt v. Weil, 46 Ind.App. 264, 92 N.E. 178. The trial court found affirmatively that the royalty payments did not indicate an acceptance of the reissue to form a new contract, but that they were paid by the

defendants under the original patent and under the injunction. If they were so made, even though defendants may have been in error as to the necessity for so doing, the payments would not indicate a meeting of the minds of the parties as to the proposed new contract. There are attending circumstances tending, we think, to corroborate the contention of defendants in this regard. As has been observed, defendants wrote plaintiffs, suggesting the desirability or necessity of a conference because of the decision in the Premier case and the subsequent disclaimer by plaintiffs. Plaintiffs, with knowledge that this was the contention of defendants, agreed to the conference. At that conference defendants took the position that the reissue patents were invalid. They followed this up with a suit brought against plaintiffs, setting up the reissue patents and claiming their invalidity. Following this they filed in the original suit petition for leave to file a bill in the nature of bill of review in which they alleged the invalidity of the reissue patents and that the entire decree in the original suit should be set aside. These acts were all consistent with the theory that defendants had not accepted the alleged proposal of plaintiffs, but quite inconsistent with the theory of acceptance. We think the finding of the trial court on this phase of the case is supported by substantial evidence, and we accept it as the ultimate fact binding on us on this appeal.

■ We put aside as unnecessary for decision the contention of defendants, which the trial court sustained, that plaintiffs have entered into license and lease agreements involving the patent in suit, which attempt to monopolize and limit competition in unpatented dies and machines and that such contracts were in existence at the time this suit was tried, except as such provision may be contained in the proposed new contract. It is noted that in the letter of December 9, 1936, this attempt is renewed by the recital that, "A sale of an anvil die without a mask by you will carry with it the right to use it according to this method," and that, "the patent situation under which you are licensed is improved by this change and applies to the same dies." But according to the Premier decision, the anvil dies were not protected by the patent, yet this so-called offer sought an agreement that would secure a limited monopoly in un-

patented anvil dies. Such a contract is violative of the public policy and would not be entitled to specific enforcement by a court of equity. Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. ——; Motion Picture Patents Co. v. Universal Film Mfg. Co., 243 U.S. 502, 37 S.Ct. 416, 61 L.Ed. 871, L.R.A. 1917E, 1187, Ann.Cas.1918A, 959; Carbice Corp. v. American Patents Development Corp., 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819; Leitch Mfg. Co. v. Barber Co., 302 U.S. 458, 58 S.Ct. 288, 82 L.Ed. 371; B. B. Chemical Co. v. Ellis, 314 U.S. 495, 62 S.Ct. 406, 86 L.Ed. ——.

The specific enforcement of a contract by a court of equity is not a matter of absolute right, but is a matter of grace resting within the sound discretion of the court. Pope Mfg. Co. v. Gormully, 144 U.S. 224, 12 S.Ct. 632, 36 L.Ed. 414; Hennessey v. Woolworth, 128 U.S. 438, 9 S.Ct. 109, 32 L.Ed. 500; Oklahoma Natural Gas Corp. v. Municipal Gas Co., 10 Cir., 38 F.2d 444. If a contract is detrimental to the public, even though not illegal, a court of equity may properly decline to enforce it. Seaboard Air Line Ry. Co. v. Atlanta, etc., R. Co., 5 Cir., 35 F.2d 609.

Even if the defendants might be held to be licensees under the alleged modified contract, they may still contend that the reissue patents, as limited by the prior art, do not cover their flat bed dies. Plaintiffs complain that the trial court put aside the plain scope and effect of the decision of this court "because the decision was entitled in a cause between the same parties on the same contract and involved consideration of the same inventive concepts by this very court upon comparison with the same prior art." Plaintiffs are not in position to claim advantage of the doctrine of res judicata. If the alleged infringement by the dies accused in this case was in fact a part of plaintiffs' original cause of action and they simply failed to make proof admissible under their pleadings, this would constitute a splitting of their cause of action and the judgment obtained would preclude them from maintaining a second suit for the residue of their claim, even though the second suit might not be identical with the first. Deweese v. Smith, 8 Cir., 106 F. 438, 66 L. R.A. 971. This principle would preclude plaintiffs not only as to the issues actually determined, but also as to every other matter which might have been litigated in the case. We assume, therefore, that plaintiffs concede that their present cause of action was not a part of nor included in the former case between the same parties decided by this court. The conclusiveness of the judgment in that case can, therefore, operate as an estoppel only as to the points or questions actually litigated and determined, and not as to matters not litigated, even though such matters might properly have been determined. Larsen v. Northland Transportation Co., 292 U.S. 20, 54 S.Ct. 584, 78 L.Ed. 1096; Radford v. Myers, 231 U.S. 725, 34 S.Ct. 249, 58 L.Ed. 454; Water, Light & Gas Co. v. Hutchinson, 8 Cir., 160 F. 41, 19 L.R.A., N.S., 219; Harrison v. Remington Paper Co., 8 Cir., 140 F. 385, 3 L.R.A.,N.S., 954, 5 Ann.Cas. 314.

The offending dies are shown in the record as Exhibits 1 and 2 and are called respectively a "clamp gauge die," and an "elevated gauge die." They are flat bed dies in which the work support is not so limited in size or shape that the work can be draped over it. These dies are said to infringe because of mask plates which overlie the upper after it is placed over the dies which have shaped openings so as to gauge the position of the upper with reference to the die. With the shoe upper which is to be used with the particular die before him, the workman makes up the masks for such die by selecting some part of the work which will be exposed by the mask, and shaping the edges of the mask hole to correspond. Each mask is specially made for some one particular pattern of shoe upper. In order to locate an upper on these two accused dies, it is placed upon the stripper plate and moved until the stitching marks painted on it coincide with the edges surrounding the opening in the mask plate of Exhibit 1, or until the edges of the appliqued strips coincide with the edges surrounding the mask opening in Exhibit 2. When this has been done, the work is gauged or located with reference to the cutting edges of the die. When placed beneath a plunger which comes down over the masks, the upper and stripper plate are forced down over the die and the holes are cut in the work by the cutters of the die. Claim 6 of reissue patent No. 20,202, identical with claim 18 of the original patent, which is the only claim of the patent here involved, reads as follows:

"6. In combination with a cutting die having cutting edges for cutting designs in shoe upper material, a support for the die and a mask cooperating therewith, said mask being provided with one or more edge portions to partially surround the cutting edges of the die, said edges or edge portions shaped to act as a gauge for the position of the material beneath the mask."

Referring to the prior art, which we may do for the purpose of construing the claims of the patent, conceding the patent's validity, it is observed that Knight (783,403 and 1,448,751), Kemp (573,274), Cotton (320,228) and Lautenschlager (1,434,060), had disclosed a cutting die for cutting designs in shoe uppers, a support for the die, a mask with one or more edge portions to surround the cutting edges and with the edge or edge portions shaped to act as a gauge for positioning the material beneath the mask. The trial court so found. In our prior opinion we did not specifically consider claim 18 of the original patent. The Circuit Court of Appeals of the First Circuit, in Premier Machine Co. v. Freeman, supra, held that there was invention in a mask having a fixed relation to the die with a window similar to the pattern to be perforated so placed with relation to the pattern and the die as to be used as a gauge, but it did not specifically consider this with relation to the prior art. No reason appears why the trial court's findings should be disturbed on this issue. While a licensee under a patent may not refer to the prior art for the purpose of showing that the patent is anticipated and hence invalid, he may, nevertheless, do so for the purpose of showing that he does not infringe the patent. Pressed Steel Car Co. v. Union Pacific R. Co., 2 Cir., 270 F. 518.

Claim 6 discloses invention only in that the edge of the window acts as a gauge corresponding to a part of the shoe design. Read in the light of the specifications, this gauge must fix the position of the upper without previously marking or forming any pattern on the work. The claims of a patent are to be read and interpreted in the light of its specifications. Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 312 U.S. 654, 61 S.Ct. 235, 85 L.Ed. 132. Kemp discloses a mechanism for perforating shoe tips or shoe caps. He employs clamps, with openings that completely surround the part of the shoe tip to be perforated. Cotton shows a device for cutting heel blanks from leather pieces. His clamping members include two portions, B and C, the latter of which is hinged to the former. Both have corresponding openings which are "in the shape of the die which cuts the blanks but a trifle larger so that it will fit over the edge of the die." These members "press upon the leather." Cotton's mask edges are designed to outline the shape of the cut-out, so that they have a certain gauging function. Lautenschlager, in his application, states that his invention relates to perforating machines, "and more particularly to a machine of that class in which a die carrying plunger is employed for perforating a complete pattern or design upon each operation." In figure 12 of his patent drawings, a gauge is shown elevated above the work support so that the vamp may be inserted thereunder. The gauge has an edge that has a curvature concentric with the curvature of the perforations to be made. The vamp has been previously marked with pin points that are brought against lines on the gauge. Knight has gauging plates with curved edges against which some part of the upper may be gauged, either by a row of stitchings or marks.

Exhibit 1, which is defendants' presently used device, follows the prior art, rather than Freeman, because to use it the work must be previously marked with an ink line, and then be slipped over the stripper plate, and beneath the gauge, the marks having been brought against the curved back edge of the gauge. Knight partially encloses the work. That is why it is necessary that Freeman's window must entirely surround the work to constitute invention. Exhibit 1 does not completely surround the work. There is testimony to show that in some size uppers, the side fingers of Exhibit 1 do not grasp the work at all. Invention or infringement on the part of defendants will not be decided on the narrow issue of degree. Guidet v. Brooklyn, 105 U.S. 550, 26 L.Ed. 1106. This applies to other differences between Knight and Exhibit 1. All are differences of degree. Defendants have shown fidelity to Knight. In so far as their devices differ from the prior art, plaintiffs have not shown that their reissue patent No. 20,202 was copied.

Exhibit 2 is an elevated gauge die. The upper plate is maintained a fixed distance above the stripper plate. The gauging is

not done without the presence of a suitable mark used in connection with the small hole having an edge on the center line of the plate and through which the front part of the toe cap is visible. It is necessary in using it to apply a mark, which Freeman said in his specifications he avoided. There is no mask, no clamping function, and no window completely surrounding the work. Any difference between Exhibit 2 and Knight is again one of degree.

The evidence shows that defendants have not copied plaintiffs' patent so far as it may show patentability, but have availed themselves of the benefits of the prior art. We conclude that the court's finding of non-infringement can not be set aside as clearly erroneous. The accused devices do not accomplish their work in substantially the same way as the Freeman invention, and there is, therefore, no infringement of claim 6 of the Freeman reissue patent.

In view of the conclusions already reached, we pretermit consideration of the other contentions urged by defendants as unnecessary in the decision of this case.

The decree appealed from is therefore affirmed.