## FREEMAN et al. v. ALTVATER et al.
### No. 12241.

Circuit Court of Appeals, Eighth Circuit.

Nov. 26, 1943.

See, also, 135 F.2d 212; 318 U.S. 750, 63 S.Ct. 770, 87 L.Ed. ——.

Marsten Allen and Allen & Allen, all of Cincinnati, Ohio, for appellants.

Edmund C. Rogers, Lawrence C. Kingsland and Kingsland, Rogers & Ezell, all of St. Louis, Mo., for appellees.

Before GARDNER, WOODROUGH, and JOHNSEN, Circuit Judges.

GARDNER, Circuit Judge.

Appellants commenced this suit in equity for the specific performance of a license agreement under reissue patent No. 20,202, issued to Benjamin W. Freeman December 8, 1936, upon an application filed October 30, 1936, for a cut-out machine for shoe uppers. It was alleged that the reissue patent was substituted under the agreement for the original patent No. 1,681,033, and an injunction and an accounting were asked. Appellees denied generally the allegations of the bill, charged that the two reissue patents obtained on the surrender of the original patent were invalid, and alleged that while they had made payments of royalties under the reissue patents, they did so under protest. By counterclaim they sought a declaratory judgment and challenged the validity of the reissue patent No. 20,202 and its companion No. 20,203, alleging that the license agreement did not cover the reissue patents; that appellees were willing to pay royalties if the agreement covered the reissues and if they were valid; that the reissue patents, however, were not valid, but that if they should cancel the license agreement and refuse to pay royalties under it they would be subject to infringement suits and because of the peril caused by such threat they prayed for a declaratory judgment as to the validity of the reissue patents. Appellants, in their reply to the counterclaim denied its material allegations and alleged that there was no justiciable controversy between the parties as set forth in the counterclaim, and that appellees had no right to a declaratory judgment.

The trial court found that there was no contract of license and no infringement, and on appeal we affirmed. Freeman v. Altvater, 129 F.2d 494. The trial court also held the reissue patents invalid. On petition for rehearing and motion to modify the opinion and revise the decree, we limited the effect of our decision so as not to include an adjudication of any issues raised by the counterclaim, expressing the view that when the trial court found no contract of license and no infringement, the other issues became moot, and hence, there was no longer a justiciable controversy between the parties. 130 F.2d 763. On writ of certiorari the Supreme Court held that this court should have determined those issues and accordingly remanded the cause to this court for that purpose. Altvater v. Freeman, 319 U.S. 359, 63 S.Ct. 1115, 87 L.Ed. 1450.

To understand the issues now before this court, it will be necessary to review the history of the Freeman patents and some of the litigation affecting them. Freeman patent No. 1,681,033 was issued August 14, 1928, upon an application filed December 3, 1923. In Freeman v. Altvater, 66 F.2d 506, decided by this court July 24, 1933, it was held that Altvater had infringed the Freeman patent and as he was licensee of that patent he could not assail it on the ground of invalidity. In Premier Machine Co. v. Freeman, 84 F.2d 425, 430, decided by the Circuit Court of Appeals of the First Circuit, on June 3, 1936, the alleged infringer of the Freeman patent was not a licensee and the court was therefore free to consider the validity of that patent. Freeman, in his original patent No. 1,681,-033, showed a machine for cutting out openings in shoe uppers and his invention was claimed to lie in the making of a die support elevated and small enough so that the upper of the shoe, approximating its final form, could rest upon it. On top of the support or "anvil" was placed a die, an element with shaped cutter pieces on it to perforate the leather of the shoe. When the upper was placed over the die, a presser member forced the material onto the die cutters and the pattern was cut into the leather of the upper. Freeman claimed to have invented a mask which was a gauging or tensioning device, by which the upper, which otherwise concealed the cutting edges of the die, could be put in proper position, or "gauged" with respect to the die cutters. A stripper plate, the upper surface of which was normally flush with the tops of the cutters, and held in position by compressible springs on the base, operated, when pushed down by the presser member, to free the leather from the dies. Included in the claims was a slide for moving the die horizontally into and out of operating position.

In the Premier decision, the court held invalid the claims for the elevated and anvil dies, for mask and stripper, and for the slide for moving dies as anticipated by the prior art and not involving invention. Claims 18, 70 and 79 were upheld as valid. The court held these claims covered "a clamp plate or mask having a fixed relation to the die and having a window the

outline of which is similar to the pattern to be perforated, and which is so placed with relation to the pattern and to the die as to be used as a gauge * * *." Certiorari was denied in the Premier case October 19, 1936. Following the Premier decision, Freeman, on October 30, 1936, applied for reissue. Formal notice of the reissue was given October 30, 1936. He also filed a disclaimer in his original patent on November 11, 1936. In this he expressly disclaimed all claims held invalid in the Premier decision. The reissue patents Nos. 20,202 and 20,203 issued December 8, 1936.

Appellees contend that the disclaimer was improper; that the claims of the original patent were in fact retained in the reissues and that as the reissues embodied the same concepts as those in the claims in form disclaimed, the basic patent was thereby rendered invalid. Maytag Co. v. Hurley Mach. Co., 307 U.S. 243, 59 S.Ct. 857, 83 L.Ed. 1264. The validity of the disclaimer and of the reissues is presented by the counterclaim.

The disclaimer statute, 35 U.S.C.A. § 65, provides that: "Whenever, through inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, a patentee has claimed more than that of which he was the original or first inventor or discoverer, his patent shall be valid for all that part which is truly and justly his own, provided the same is a material or substantial part of the thing patented; and any such patentee * * * may, on payment of the fee required by law, make disclaimer of such parts of the thing patented as he shall not choose to claim or to hold by virtue of the patent or assignment, stating therein the extent of his interest in such patent. Such disclaimer shall be in writing, attested by one or more witnesses, and recorded in the Patent Office; and it shall thereafter be considered as part of the original specification to the extent of the interest possessed by the claimant and by those claiming under him after the record thereof. * * *"

 Disclaimer and reissue are not to be confused as the distinction between them is more than a matter of form. Disclaimer is a voluntary abandonment by the patentee of that to which he was not entitled, the purpose of the statute being to mitigate the harsh rule which destroyed the entire patent in the event that any claim was held to be invalid. A duty to disclaim arises where the patentee has claimed more than the law permits and where he has included in his claims something which was previously known to the art. Reissue is the act of the commissioner in granting a new patent, "Whenever any patent is wholly or partly inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadventence, accident, or mistake, and without any fraudulent or deceptive intention * * *." The reissue is "for the same invention, and in accordance with the corrected specification * * *." 35 U.S.C.A. § 64. If the purpose is to reform or alter the description of the invention or to convert a claim from one thing into something else, it must be accomplished by reissue; but if the purpose is to obviate an ambiguity in a specification it must be by disclaimer. Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 22 S.Ct. 698, 46 L.Ed. 968. A disclaimer can not add a new element to anything contained in the claims, but it affords opportunity for relinquishment to restrict or curtail the monopoly of the patent. A reissue, on the other hand, makes possible the alteration of the original invention by addition of a new element. Fruehauf Trailer Co. v. Highway Trailer Co., 6 Cir., 67 F.2d 558; Grasselli Chemical Co. v. National Aniline & Chemical Co., 2 Cir., 26 F.2d 305. A patent amended by disclaimer speaks from the date of the original patent but the reissued patent, so far as the amended claim is concerned, speaks only from the date of the reissue. Altoona Theaters v. American Tri-Ergon Corp., 294 U.S. 477, 55 S.Ct. 455, 79 L.Ed. 1005.

In his disclaimer Freeman said that he entered a disclaimer as to claims 6, 7, 8, 10 to 17 inclusive, 62, 66 to 69 inclusive, 71 to 74 inclusive, 79 and 94. The disclaimer contains the following language: "And your petitioner further represents that he has filed a reissue application for reissue of the said letters patent, in which he has omitted the claims above disclosed, and in their place substituted ones which he believes to properly express his invention, and that this disclaimer is filed out of abundant caution to preserve unto him the rights to protection for that of which he is the original and first inventor."

The disclaimer here was filed in connection with application to reissue. It is observed that appellants took the position that the disclaimer was but an adjunct to the reissues; hence, if the reissue patents are void it would seem to be unnecessary to consider the propriety of the disclaimer. We shall therefore consider the question of the validity of the reissue patents.

■ Appellees contend that the statutory conditions precedent to the right or authority of the commissioner to reissue a patent were not here present. The statute (35 U.S.C.A. § 64), as has been observed, permits reissue "Whenever any patent is wholly or partly inoperative or invalid, * * * by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention * * *." Mistake, as used in this statute, may cover any sort of misconception or misapprehension. As said in Motion Picture Patents Co. v. Laemmle, D.C.N.Y., 214 F. 787, 794, "It is far from simple to fix on phraseology for patent specifications and claims which will successfully resist attack, and where, as here, there was no fraud or deceptive intention, and the patentee claimed more as new than he was entitled to such error was clearly due to that inadventence, accident, or mistake in respect of which the statute was intended to afford relief."

In the oath filed as the basis for the reissue No. 20,203, Freeman stated that the letters patent No. 1,681,033 "are inoperative, or defective or insufficient for the reason that certain claims thereof do not adequately and satisfactorily define and cover said improvements; and that the insufficiency and defects consist particularly in claiming the invention too broadly, and in not limiting certain of the claims to the real invention made by him; * * * the error which rendered such patent so inoperative arose from inadvertence, accident or mistake, and without any fraudulent or deceptive intent * * *. The inadvertence, accident and mistake arose as follows: the affiant understood that claims 6, 7, 8, 62 and 71, relating to the anvil die of his disclosure, and claims 62, 65 to 69 and 94, relating to said anvil die with certain guiding means, stated patentable invention independent of the use of the same, merely because applicant had discovered a new use for such mechanisms as were set forth in said claims and because they called for mechanisms not the same as any prior mechanism, * * *"; that by the decision in the Premier case, claims 6, 7, 8, 62 and 71 were held invalid, as mechanical claims and he had instructed his attorneys "to file a reissue dropping those claims and inserting in their place claims to his method of operation of the mechanism covered by said former claims, and alternatively certain claims to his said mechanism limited to use thereof in accordance with his said method, which is done herewith." The oath also contained the following: "Affiant further says that his invention in connection with a mask in combination with a shoe cutting die was not necessarily related to his invention of a machine, or to his invention for cutting out shoe upper parts by means of an anvil die, and indeed presented a different field of invention therefrom and that instead of dividing out said mask claims, as he now knows was proper since the said decision of the Court of Appeals of the 1st Judicial Circuit, his attorneys inadvertently permitted the said claims to be part of his patent herewith tendered for surrender, wherefore he instructed his attorneys upon reissue to ask for a separate reissue patent covering the said die and mask aspect of his invention."

■ Jurisdiction of the Patent Office over a patent is lost by its issue and is not regained by the application for a reissue. McCormick Harvesting Machine Co. v. Aultman & Co., 169 U.S. 606, 18 S.Ct. 443, 42 L.Ed. 875. Hence, the commissioner can not on application for reissue open up the case for new parol testimony as to the nature and extent of the improvement claimed except in certain special cases provided by statute. The commissioner is without authority on such an application to receive testimony for the purpose of enlarging the scope and effect of the invention. Such reissue is primarily to render effectual the actual invention for which the original patent should have been granted. Union Paper Collar Co. v. Van Deusen, 23 Wall. 530, 23 L.Ed. 128. The decision of the Patent Office as to the existence of grounds for a reissue is, if based on disputed questions of fact, conclusive. But if it appears from the face of the record that no ground for reissue in fact existed, the duty of construing the effect of such undisputed facts remains in the court. Cridlebaugh v. Rudolph, 3 Cir., 131 F.2d

795. Reissues having been granted, we must assume that the commissioner found the facts relative to inadvertence, accident or mistake in favor of the applicant, but if there is an entire absence of evidence to support the commissioner's action his decision is not binding on the court. General Radio Co. v. Du Mont Laboratories, 3 Cir., 129 F.2d 608. The statute is to be liberally construed and so construed we think it can not be said that there was an entire absence of evidence to support the action of the commissioner on this issue.

 Reissue No. 20,203 is substantially for a method or process. The original patent No. 1,681,033, was, however, a machine patent. A mechanism is, of course, patentable, as is also a process, but the operation of a device covered by the patent is not patentable as a process. Risdon Iron & Locomotive Works v. Medart, 158 U.S. 68, 15 S.Ct. 745, 39 L.Ed. 899. In the Medart case it was held that the operations of the machine resulting in a certain product could not be patented as a process. The invention of a machine for the more perfect manufacture of a product may achieve a result better than produced before but the operation of the machine is not patentable as a process. The statute (35 U.S.C.A. § 64) requires that the reissue claim "the same invention." A reissue patent is void if not for the same invention as disclosed in the original patent. Failing to disclose in the original patent matters claimed in the reissue will not enable the patentee to cover such new matter by the reissue, at least when the matter was within his knowledge when he applied for the original patent. It is not enough that the invention might have been claimed in the original patent or that it was suggested in the specification, but it must appear from the face of the instrument that what is covered by the reissue was intended to have been covered and secured by the original. U. S. Industrial Chemicals, Inc., v. Carbide Corp., 315 U.S. 668, 62 S. Ct. 839, 86 L.Ed. 1105. A patent for a process and a patent for a machine are quite different things. "Where a new process produces a new substance, the invention of the process is the same as the invention of the substance, and a patent for the one may be reissued so as to include both, as was done in the case of Goodyear's vulcanized-rubber patent. But a process, and a machine for applying the process, are not necessarily one and the same invention.

They are generally distinct and different." James v. Campbell, 104 U.S. 356, 377, 26 L.Ed. 786. The reissue patent is therefore for a different device or process than the original patent describes and is without invention.

 Claims 1 to 33 of reissue No. 20,203 embrace a machine with pressure applying means, an independent but cooperating ornamental means, a means for support of the ornamenting device, the ornament and support devices arranged to support in a flat position a portion of a shoe upper and to allow other portions of the upper to extend about its sides. Some of the claims include a clutch locking mechanism, and a means for releasing the clutch locking mechanism by movement of the support, and a clamping mask and a gauge for the positioning of the material with relation to the die. These are the essentials of the first 33 claims, with certain variations in language and detail. In the Premier decision, the die fashioned so that an upper could be draped about it, the stripper plate, and the mask or clamp were held not to involve invention. Claims 18, 70 and 81, construed as describing a clamp acting as a guide, having a window of a shape and size corresponding to the pattern of the decorations to be perforated in the shoe, and which made it possible to place the upper with reference to the die so that the pattern would appear where desired without placing special marks on the leather, were held to be patentable. In the later decision of this court (129 F.2d 494, 500) it is pointed out that this feature was not new and did not involve invention. In this connection we said: "Referring to the prior art, which we may do for the purpose of construing the claims of the patent, conceding the patent's validity, it is observed that Knight (783,403 and 1,448,-751), Kemp (573,274), Cotton (320,228) and Lautenschlager (1,434,060), had disclosed a cutting die for cutting designs in shoe uppers, a support for the die, a mask with one or more edge portions to surround the cutting edges and with the edge or edge portions shaped to act as a gauge for positioning the material beneath the mask. The trial court so found. In our prior opinion we did not specifically consider claim 18 of the original patent. The Circuit Court of Appeals of the First Circuit, in Premier Machine Co. v. Freeman, supra, held that there was invention in a mask having a fixed relation to the die

with a window similar to the pattern to be perforated so placed with relation to the pattern and the die as to be used as a gauge, but it did not specifically consider this with relation to the prior art. No reason appears why the trial court's findings should be disturbed on this issue." We adhere to this view.

Freeman by the disclaimer and reissue oaths has accepted the Premier decision as stating the law of his patent. We have expressed the view that the dominant elements of the patent found in claims 1 to 33 in reissue No. 20,203 are not the proper subject of patent. Claims 34 and 35 purport to be process claims describing a machine for cutting openwork designs in shoe uppers, according to a process in which the uppers are made of two or more pieces of flat material attached together with a lining such that the combined pieces can not be placed in flat position, and without the desired design being cut in the work, comprising a bed, pressure applying means, a work support and die mounted thereon, permitting draping the rest of the upper, preventing its buckling in the portion to be cut. But this is essentially a machine patent. If the process were the mere function of a machine, some other machine capable of performing the same function might be anticipated, not because a process can be anticipated by a mechanism but because the mere function of a machine is not patentable as a process. Carnegie Steel Co. v. Cambria Iron Co., supra. Viewed as a process patent, the claims depart substantially from the original patent. If, on the other hand, it is a machine patent its essence is embodied in the original patent, the features of which were not patentable.

Claims 36 to 40 purport to be method claims. Claim 39 may be taken as typical. It reads as follows: "A method for manufacturing shoes which comprises securing upper blanks and lining together to form a non-planiform work piece having the lining thereof attached and in place, supporting said work piece with a portion thereof flatwise, said portion designed to receive cut outs, and draping the remainder of said work piece about the sides of the support, said support having a previously determined relation to the die, locating the said work piece upon said support with reference to the die, and thereupon striking the assembled and relatively located parts a blow with a press head to effect a penetration of the work piece by the die."

What is said with reference to claims 34 and 35 is applicable also to these claims. The reissue patent embraces in its essential elements the very things which the Premier decision and this court held not patentable.

Perhaps passing reference should be made to certain other features. The clutch locking means was found in die processes before Freeman, as shown by Schwalbach, 1,313,956; Leavitt, 620,659; and Furber, 15,475,181. Some of the claims include the addition of a backing device. This was found in Newton, 1,439,019. Certain claims refer to a guide for withdrawal of the work from underneath the press head. The Premier decision held them "clearly invalid," and we are in accord with that view. The trial court found that presser members, clutches and backing paper were all old in the art. Claim 27 recites a pivoted holddown plate which extends to a position out under the press head so that it can be held by the operator. Knight, however, shows a similar feature.

Referring now to reissue No. 20,202, the same contentions are made with reference to its claims. The reissue oath in No. 20,202 states that the inadvertence, accident and mistake arose as follows: Freeman understood that claims 6, 7, 8, 62 and 71, relating to the anvil die, and claims 62, 65 to 69 and 94, relating to the anvil die with guiding means, stated patentable invention independent of the method of use, merely because applicant had discovered a new use for such mechanisms as were set forth in said claims and because they called for mechanism not the same as any prior mechanism; that the Premier decision held claims 6, 7, 8, 62 and 71 invalid by use of the following language: "It seems clear that Freeman's contribution to the art in a mechanical way as described in this group of claims was at best of doubtful patentability and cannot be found to involve invention with such clearness and certainty as is reasonably required in view of the extent and burden of the monopoly claimed."

Accordingly, it is alleged that attorneys were instructed to file the reissue, dropping those claims and inserting in their place claims to his method of operation of the mechanism covered by those claims, and alternatively certain claims to his mechanism limited to use in accordance

with his method. The affidavit further recites: "Affiant says that he did not understand that his claims 10 to 17 and 79 were subject to construction as if dis-associated from a die, and covering the mere use of a window in connection with a clamp. Accordingly applicant, in view of said decision, upon being advised, instructed his attorneys to drop, upon reissue the said claims 10 to 17 and 79, and instead to present in their place certain claims which included the ornamenting means or die as a part of the combination with his said mask and to present as claims for reissue in said divisional case, claims which were free of the defect of not including the part which cut into the shoe material along with the mask; which affiant's attorneys have done herewith."

The claims, nine in number, describe combinations. Claim 1 reads as follows: "The combination of a support, an ornamenting die on a support, means for stripping a shoe upper from the ornamenting die, and a shoe upper gauging mask, said mask having position indicating means partially surrounding a portion of an upper being ornamented and shaped to correspond with portions of the shoe upper design, whereby said upper may be correctly aligned with said position indicating means."

From what has already been said, it is manifest that the patent does not disclose anything new in the use of the combination. Continental Machine Co. v. Grob, 8 Cir., 137 F.2d 470. It required no inventive genius to formulate such a combination. It is not enough that the combination be new and useful. At most it required mechanical skill in creating it, and it does not "reveal the flash of creative genius." Cuno Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 41, 86 L.Ed. 58. The combination includes the mask and die, but, as we have heretofore pointed out (129 F.2d at page 500), gauging is not new in the art. The combination discloses the exercise of the prior skill in the art, which is not enough even though greater mechanical efficiency may have resulted. Detrola, etc., Corp. v. Hazeltine Corp., 313 U.S. 259, 61 S.Ct. 948, 85 L.Ed. 1319.

It remains to refer to claim 7, which reads as follows: "A support for shoe upper material and a clamping member cooperating therewith constructed and arranged to provide a preliminary yielding engagement permitting adjustment of the material and subsequently a firm holding engagement therewith."

This claim does not, we think, disclose patentable invention. It requires only mechanical skill to produce it.

The decree appealed from is therefore affirmed.