## A. L. SMITH IRON CO. v. DICKSON.

### No. 948.

District Court, D. Connecticut.

Sept. 4, 1943.

Fish, Richardson & Neave, of Boston, Mass., and Wiggin & Dana, of New Haven, Conn., for plaintiff.

Daggett & Hooker, of New Haven, Conn., and Kenyon & Kenyon, of New York City, for defendant.

SMITH, District Judge.

This is an action for a declaratory judgment on the validity of a patent and for injunction and damages for unfair competition. Diversity of citizenship exists. The defendant is the sole licensee under a United States patent, No. 1,864,232, held by a British concern for the manufacture of hatch covers for ships, consisting of one or more planks assembled in a certain manner with the ends strengthened and protected by metal bands or shoes. Hatch covers are used in large numbers in all merchant ships, up to approximately 1,000 being required for each ship constructed under the present merchant-ship building program in this country. The United States Maritime Commission is the sole ultimate purchaser, and obtains hatch covers for its ships from joiner contractors who, in turn, purchase the bands and other material, and themselves manufacture the hatch covers. The patent does not cover the manufacture of the bands. The plaintiff in this action is engaged in the manufacture of iron and steel products and has made and sold one order of more than 30,000 bands to be used in the construction of hatch covers for merchant ships. The defendant falsely represented by magazine advertising and by his stationery that the patent covered the bands, and defendant

engaged in the sale of bands with an implied license to practice the patent, at one time directly and later through two sublicensees. By this method, the defendant and his sublicensees obtained and maintained a virtual monopoly in the sale of the bands to be used in the manufacture of hatch covers.

Plaintiff has endeavored to continue and expand its manufacture and sale of the bands, but has been unsuccessful in obtaining any other orders than the one above referred to. The joiner contractors engaged in the manufacture of hatch covers, because of the existence of the patent and the licenses under it, have been and are unwilling to purchase bands from sources other than the defendant or his sublicensees. Plaintiff brought this action seeking a declaration that the patent is invalid, and an injunction against defendant and all others controlled by him to prevent his representing that the patent covers the bands, and against his threatening or instituting actions for infringement against the plaintiff or its customers, and asking an accounting and damages.

The misrepresentations as to the fact of the patent's covering the bands ceased when the plaintiff, on first being notified of defendant's claims as to the patent's covering the bands, questioned this claim of the defendant. Subsequent to the bringing of this action and the entry of a temporary injunction, defendant, with the consent of the patentee, negotiated new agreements with its sublicensees, requiring them to separate in their quotations and billings the charge for bands sold by them and a specified amount per hatch cover for royalty, and the Dickmar Company, exclusive sublicensee in the eastern territory, was granted the power and required upon request of purchasers from them, to issue licenses for making, use, or sale of the patented hatch covers upon a royalty in the same amount as that stated in the contract between defendant and his sublicensees to be the royalty due defendant per hatch cover. Bayer, nonexclusive sublicensee for the western United States, was required to make similar separation of prices charged for covers or parts thereof and the amount established as royalty, and was required to state that license for the making, use, and sale of patented hatch covers within Bayer's sales territory without restriction as to the source of manufacture of the bands, might be obtained from the defendant on payment of a similar royalty for each hatch cover.

None of the joiner contractors or other persons have made application either to the sublicensees or to defendant for licenses under this offer. All bands purchased for use in making hatch covers for the merchant-ship building program are obtained from the two sublicensees of the defendant at a price, exclusive of the amount stated to be royalty, higher than the price at which the plaintiff offers to sell the bands.

■ Defendant attacks the jurisdiction of the Court over the cause of action for a declaratory judgment on the validity of the patent in the absence of the patentee, claimed by defendant to be an indispensable party to any action involving the validity of the patent, relying on the decision of the Circuit Court of Appeals for the Second Circuit in Contracting Division v. New York Life Insurance Co., 1940, 113 F.2d 864, where the Court was held to lack jurisdiction over a cause of action against a bare licensee of a patent in the absence of jurisdiction over the patent owner. It is plaintiff's contention that since defendant is the exclusive licensee for the United States, the owner of the patent is not an indispensable party to the maintenance of this cause of action, relying upon American Optical Co. v. New Jersey Optical Company, D.C.Mass., July 9, 1943, 50 F. Supp. 806. In that case, however, the license was construed to give the exclusive licensee the right to bring suit on the patent in its own name or in that of the owner. The license agreement in this case does not, in its terms, grant to the defendant the right to sue on the patent but, on the contrary, charges the owner of the patent with the duty of maintaining its validity. In this situation, the ruling in the Contracting Division case controls, and jurisdiction is lacking in the Court to determine the validity of the patent in the absence of the patent owner. It may well be that the basis of this rule, the avoidance of a multiplicity of actions in different jurisdictions on the validity of a patent with its resultant burden on the patent owner and the Courts, ought to be re-examined in the light of its disadvantages in a case such as the present where ownership is held abroad, and where, in practice, no determination of the validity of the patent is possible if the patent owner chooses to rely for its effectiveness upon

its use by licensees solely as a threat of litigation. Submission to suit in a suitable jurisdiction in this country might be a desirable condition upon the ownership of American patent monopoly, but in the absence of legislation to that effect, jurisdiction must be held lacking in a situation of this type.

■ The defendant herein, however, is properly before the Court on the issue of unfair competition by his misrepresentation that the patent covers the metal bands, and on the issue of misuse of the patent monopoly, of which he has the use as licensee, to create an illegal monopoly in the sale of the unpatented metal bands. This latter practice is indistinguishable from the practice condemned by the Courts in the line of cases stemming from the decision in the Carbice case, Carbice Corporation v. American Patents Development Corporation, 1931, 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819; Leitch Manufacturing Co. v. Barber Co., 1938, 302 U.S. 458, 58 S.Ct. 288, 82 L.Ed. 371; B. B. Chemical Co. v. Ellis, 1942, 314 U.S. 495, 62 S.Ct. 406, 86 L.Ed. 367; Philad Co. v. Lechler Laboratories, Inc., 2 Cir., 1939, 107 F.2d 747; U. M. A., Inc., v. Burdick Equipment Co., D.C.S.D.N.Y.1942, 45 F.Supp. 755; although so far as appears, the question has heretofore arisen only as to the effect of such conduct as a defense to an action for infringement of patent, except in the case of American Lecithin Co. v. Warfield Co., 7 Cir., 1939, 105 F.2d 207, holding that affirmative relief is available by way of injunction and damages for such conduct, if a proper showing is made, or where violation of the anti-trust laws is alleged. Barber Asphalt Corporation v. La Fera Grecco Contracting Co., 3 Cir., 1940, 116 F.2d 211; Id., 3 Cir., 1941, 122 F.2d 701.

■ There are two practices under attack here, one—the misrepresentation of the coverage of the patent in order to sell articles not covered by it in fact; and second, the misuse of the patent in violation of the rule in the Carbice case by tying together the license to use the patented method of construction with the sale of unpatented materials, in this case the metal bands, so as to control the market for the unpatented bands for that purpose. Both practices are wrongful, and may be enjoined. Here the two are interwoven and both must be effectively abandoned for the defendant to purge himself of their effects on his right to enjoyment of the legitimate patent monopoly. This can only be done by effectively removing the effects on the trade of both the former illegal practices. Since the sale of bands by the defendant, and later by his licensees, with an implied license to practice the patent has been a part of the scheme to monopolize sale of the unpatented bands, it would appear that the only effective method of purging the effects of the illegal practices would be to separate entirely the sale of the bands from the payment of royalties. The letters of defendant to the joiner contractors offering to arrange license agreements indicate that identical royalty agreements were not contemplated even among the joiner contractors already customers of defendant and his two sublicensees. There is, therefore, no guarantee to other joiner contractors who might obtain licenses and purchase bands from plaintiff or other outside manufacturers that they may not be at a competitive disadvantage because of varying terms in royalty agreements made with other joiner contractors purchasing bands from defendant or his sublicensees, even though the royalty might be stated at a fixed amount, while the price of the bands sold with the royalty remained subject to change.

These letters are part of the attempt of the defendant to purge himself of the effects of his earlier conduct. While it appears that he desisted from his earlier misrepresentations on the coverage of the patent, he has not yet sufficiently altered his method of doing business to entitle him to enjoy the fruits of the patent monopoly.

■ A monopoly in the unpatented bands has been built up by defendant and his sublicensees through misuse of the patent. To break up that illegal monopoly, nothing short of a choice between the band business and the patent business can be fully effective. The injunction, therefore, should be made permanent, and should continue to restrain the defendant from directly or indirectly representing that the manufacture and the sale of metal bands is covered by the Cocks patent, and should further restrain him and his agents and licensees from suing to enforce the Cocks patent against plaintiff or plaintiff's customers while engaged in directly or indirectly combining the sale of unpatented

bands with a license, express or implied, to practice the Cocks patent.

Plaintiff has shown probable damage in the threat of action to enforce the patent against plaintiff's customers. It has not shown substantial injury already suffered by it necessary to sustain an award of damages.

Defendant's contention that plaintiff's use of the injunction is unfair and that plaintiff, therefore, does not come into court with clean hands appears to be without foundation. No material misstatement of the legal situation appears in plaintiff's letters referred to by defendant.

A decree will be entered providing that the injunction be made final in the terms indicated above, and that plaintiff recover its costs.

Form of decree may be submitted by agreement or on notice.