**F. X. HOOPER CO., Inc., v. SAMUEL M. LANGSTON CO. et al.**

No. C–3284.

District Court, D. New Jersey.
Aug. 10, 1944.

Charles P. Hutchinson, of Trenton, N. J., and Samuels & Clark, of Baltimore, Md., for plaintiff.

Harry B. Rook, of Newark, N. J., and Dean, Fairbank & Hirsch, of New York City, for defendant Samuel M. Langston Co.

Bleakly, Stockwell & Zink, of Camden, N. J., for defendant Samuel M. Langston.

FORMAN, District Judge.

Plaintiff, a corporation of the State of Maryland, is a manufacturer of machines for making corrugated paper box blanks. Defendant Samuel M. Langston Company, hereinafter referred to as Company, a corporation of the State of New Jersey engaged in the same business as the plaintiff, is the owner of Letters Patent No. 2,262,913 (referred to as the Behrens patent), relating to a cut-off drive mechanism for use in cutting box blanks from a moving web of corrugated paper, which patent was issued to it on November 18, 1941, as assignee of Herbert C. Behrens, the inventor. Defendant Samuel M. Langston of Wenonah, New Jersey, is the inventor of a sheet scoring and slotting mechanism used for slotting and scoring paper box blanks, a patent for which was issued to him on July 1, 1930, numbered Letters Patent No. 1,769,883, referred to as the Langston patent.

This suit is brought under the Federal Declaratory Judgment Act, 28 U.S.C.A. § 400, to seek a judgment declaring invalid Letters Patent Nos. 1,769,883, the Langston patent, and 2,262,913, the Behrens patent, as to all the claims thereof, or if valid, that the said patents are not infringed by plaintiff and for an injunction against the defendants preventing them from further threatening and bringing suit for infringement against plaintiff or its customers and from any interference with plaintiff's manufacture, use and sale of its machines.

Plaintiff alleges that it presently manufactures machines for slotting and scoring paper box blanks similar to that disclosed in Letters Patent No. 1,567,656 issued to defendant Samuel M. Langston on December 29, 1925, which has expired, and that the machines it manufactures for use in cutting paper box blanks is covered by Letters Patent No. 2,052,461 issued to it on August 25, 1936, upon the application of Henry B. Greenwood. It admits that since the grant of the Behrens patent on November 18, 1941, it has altered the design of its machine, but that the change was not in the operation of the machine and does not infringe upon the said Behrens patent. It is stated in the complaint that the machines manufactured by plaintiff would infringe both the Langston and the Behrens patents if the scope asserted for the claims of these patents by the defendants was valid; that "defendants have led plaintiff to believe that they will sue plaintiff if it does not discontinue the manufacture, use, and sale of" its machines; that defendants have failed to bring suit against it for infringement. The invalidity of the Langston and Behrens patents is claimed upon several grounds and if the patents are held to be valid, the scope claimed for them by the defendants is charged to be broader than the intention.

It is further alleged in the complaint that defendant Samuel M. Langston is the president of the defendant Company and that plaintiff "believes" that legal title to the Langston patent is held by the former but that the rights and privileges of ownership are exercised by the latter, "the exact nature of whose interest in said Langston patent is at present unknown to plaintiff"; that "plaintiff therefore reserves the right to amend the statement in this complaint regarding the title to said patents to accord with the facts as they may later appear."

A motion to dismiss the complaint as to defendant Company is before the court upon the grounds that (a) under Rule 20(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, it is improperly joined in the action against defendant Samuel M. Langston and (b) that there is no actual controversy to support the action.

Defendant Company, denying that defendant Samuel M. Langston is its president, contends, under its first ground, that there are two independent patents involved here which are separately owned, one by each defendant, and no question of law or fact exists which is common to both defendants or to both patents, for the reasons that defendant Company has a non-exclusive shop right to the Langston patent and does not exercise the rights and privileges of ownership, and that no machine alleged to infringe one patent is alleged to infringe the other patent.

Plaintiff answers these contentions by pointing out that defendant Company manufactures machines under the Langston patent and a notice of the patent appears upon each of its machines; that defendant Samuel M. Langston has held himself out to be president of defendant Company;

that he was so president at the time of the grant of the Langston patent and developed the patent at the plant of defendant Company at its expense, by its engineers on company time; that although the Langston patent is filed in his name as an individual and no assignment appears on the record, in effect, the defendant Company legally holds the equitable title to the Langston patent and could enforce legally an assignment of the legal title to itself; that defendant Company cannot be held to waive its rights to such ownership, which is being held for its benefit, for the first·time in this suit because at the time of the commencement of this action the defendant Company was the real owner; that the Langston and Behrens patents are so closely related as to be capable of cojoint use and therefore can be included in a single suit for infringement. Plaintiff further contends that the language in the complaint is sufficiently broad ·to include any interest that the defendant Company may have in the Langston patent, and that the reservation of the right to amend is a means of enabling it to particularize that interest as soon as the true facts become known to it.

Plaintiff has since applied to the court for permission to amend the complaint by inserting as one of the amendments the following allegation:

"The Samuel M. Langston Company is the true owner of the equitable title to said patents, the alleged inventions of said patents having been developed in the Langston Company's plant, at its expense and by its engineers, on the company's time, the expense of obtaining the patents having been paid by the company; the application for said patents in the absence of an assignment to the company was a violation of the company's rights in said inventions and the entire right, title and interest in and to said patents in effect is the property of said company and the legal, as well as the equitable, title could be obtained at any time giving the Langston company the complete right, title and interest in and to said patents, on demand or by the proper proceeding instituted on behalf of said company."

Moreover, the plaintiff argues that there can be no dismissal for misjoinder of parties under Rules 20 and 21 of the Federal Rules of Civil Procedure, supra, but that these rules provide for the separation of causes improperly joined.

The Federal Rules of Civil Procedure, supra, provide as follows:

"(a) Permissive Joinder. All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

"(b) Separate Trials. The court may make such orders as will prevent a party from being embarrassed, delayed, or put to expense by the inclusion of a party against whom he asserts no claim and who asserts no claim against him, and may order separate trials or make other orders to prevent delay or prejudice." 28 U.S. C.A. following section 723c, Rule 20.

"Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately." 28 U.S.C.A. following section 723c, Rule 21.

The rules for permissive joinder are set forth in Rule 20(a), supra. The court has the power to order separate trials or make any other orders it sees fit where a party is joined unnecessarily. Rule 20(b), supra. Misjoinder of parties does not give ground for dismissal of an action, but such parties may be dropped at any stage of the proceedings. Similarly, a claim against a party may be severed, Rule 21, supra. These same rules apply to suits for a declaratory judgment, Rule 57, supra.

█ The complaint is artlessly drawn but it is nevertheless evident that two distinct causes of action are set forth therein. One involves the Langston patent in which plaintiff is proceeding against Samuel M. Langston individually and against the Company. In the other cause concerning the Behrens patent, plaintiff also seeks to proceed against both Samuel M. Langston, the individual and the Company. Before we consider the propriety of joining both defendants in the suit involving these two patents, we must inquire into the propriety of joining the two causes.

The Langston patent concerns itself with a slotting and scoring machine. This machine is used primarily to make the folds in paper boxes. The Behrens patent is a cut-off drive machine used to cut the box blank from the long web of paper some time before it is subjected to the slotting and scoring machine. Although both are used in the manufacture of paper box blanks, each has its separate task to perform quite independently of the other. The operations undertaken by each machine are separate and distinct, one from the other. There is no evidence to support plaintiff's claim that the two machines are so closely related as to be even capable of cojoint use, much less that they are used jointly. The right to relief asserted under each patent does not arise under the same transaction and there is no common question of law or fact as to both defendants that might arise. Upon the evidence submitted, there is no basis upon which these two causes can be joined under Rule 20(a), supra, and they must therefore be severed, Rule 21, supra. The complaint should be so amended.

█ There appears from the pleadings presently before the court that a question of fact is posed as to what is the actual arrangement between the defendants as to the use of the Langston patent. The claims of the parties concerning this matter are conflicting and insufficient information is before the court to enable it to determine the legal position of the defendant Company with respect to ownership of the Langston patent. However, the allegations of the complaint are sufficiently set forth to sustain a claim to relief against the defendant Company, and the affidavits offered by this defendant to show its interest in the Langston patent do no more than frame an issue on that point. They do not offer substantial proof that defendant Company is a non-exclusive licensee. It is the failure to state a claim upon which relief can be granted that is a ground for dismissal, Rule 12(b)(6), supra, not that a pleading should state facts sufficient to constitute a cause of action. See Dioguardi v. Durning, 2 Cir., 139 F.2d 774. The motion to drop this defendant in connection with the cause of action involving the Langston patent may be pressed at a later stage in the proceedings should it be necessary.

The pertinent cases cited by the defendant Company in support of its contention that there should be dismissal for misjoinder are Silvray Lighting v. Versen, D.C., 25 F.Supp. 223; Contracting Division, etc., v. New York Life Ins. Co., 2 Cir., 113 F.2d 864; and A. L. Smith Iron Co. v. Dickson, D.C., 52 F.Supp. 566, reversed 2 Cir., 141 F.2d 3.

In Silvray Lighting v. Versen, supra, a motion to dismiss certain defendants was granted in a declaratory judgment suit to determine the validity and infringement of a patent because of failure to state a cause of action as to those defendants. The court stated that the pleadings showed that these defendants had no interest in the patent in question unlike the case at bar where an interest is shown, although from the pleadings it is impossible to determine the extent of that interest, and therefore its legal effect.

The Contracting Division case, supra, was a suit for patent infringements wherein the defendant filed a counterclaim seeking a declaration that the patent was invalid. A motion to dismiss the complaint and counterclaim was granted, the interest of the plaintiff in the patent having been held to be that of a non-exclusive licensee, who cannot maintain a suit without the presence of the patent owner. The discussion of the circuit court in that case and in the later case of A. L. Smith Iron Co. v. Dickson, supra, in which the Circuit Court of Appeals reviews its former opinion in the Contracting case, reveals that the plaintiff in that case did not assert itself as a licensee but rather took the position that it was so fused with its parent corporation, the assignee of the patent from itself as assignor, that the assignment was mere form and a nullity. The court stated: " * * * The defendant had filed a counterclaim, seeking a declaration that the patent was invalid, and this we

dismissed, not on the merits, but because the owner of the patent was not a party. There can be no question that we are right in doing so, since, as we have just said, the plaintiff had never claimed the right to sue as licensee, but only as owner; and so, as soon as we had decided that it was not an owner, all controversy between it and the infringer necessarily ended." 141 F.2d at page 6. Thereupon the decision of the lower court in the Smith case dismissing the complaint on the theory that the patent owner was an indispensable party, as stated in the Contracting case, was reversed. The alleged infringer was sustained in his suit against a licensee subject to the right of the owner to intervene. In the instant case the owner of the Langston patent is before the court and the pleadings thus far claim that defendant company is in reality the true owner of the patent. The evidence of defendant Company's interest in the Langston patent is not fully before the court and it is not feasible at this time to consider the theories upon which plaintiff claims true ownership of this patent to be in defendant Company.

The complaint is so framed that it may include any interest defendant Company may have in the Langston patent and the amendment particularizing the charge as to that interest is allowed. The pleadings thus far show that defendant Company has some interest in the Langston patent, although it is impossible to determine whether it is that of an owner or licensee. It is possible that the evidence adduced at the trial will support a finding that both defendants have an interest in the Langston patent and both are therefore proper parties to the suit relating to the Langston patent.

With respect to the cause of action involving the Behrens patent, the plaintiff fails to state a claim upon which relief can be granted as to Samuel M. Langston individually. The defendant Company is alleged to be the owner of the Behrens patent. The only possible tie between the individual defendant and the Company is in his capacity as owner or president of the company. That relationship has no bearing on his individual status which cannot be affected by a patent owned by the company. The cause of action involving the Behrens patent will be dismissed as to Samuel M. Langston as an individual. Rule 12(b)(6), supra.

The second ground of attack against the complaint as to defendant Company is that there is no actual controversy regarding the Behrens patent owned by it. In support of its charge that this defendant threatened infringement proceedings against the plaintiff, it produces two letters, one of which was sent to the plaintiff and the other which was sent to plaintiff's counsel, both relating to the Behrens patent. Defendant company contends that these letters were merely attempts to secure information so as to determine whether the plaintiff was infringing the Behrens patent and asserts that there has never been a charge of infringement. It considers the language of the letters as a "warning" rather than a "charge." Plaintiff answers this contention upon several grounds. It contends that if it appears that the defendant Company is the owner of the equitable title to the Langston patent, to which plaintiff alleges a controversy is admitted, as well as the Behrens patent, then controversy as to the Behrens patent need not be proved, since it comes before the court as "correlated matter, i. e., part of the same transaction" under Rules 20 and 21, supra. This reasoning would not follow unless it could be shown that the mechanisms described in each of the patents are so interrelated that the infringement of one would be an infringement of the other. Such proof, if it exists, is not before the court.

There is no question that the letters of November 8, 1943, and November 23, 1943, from defendants' counsel to plaintiff and its counsel, respectively, concerning the Langston patent, were charges of infringement and must be regarded as threats of legal proceedings under the above cases.

Plaintiff further contends that the letter dated November 22, 1943, attached to the complaint, constitutes a threat of infringement proceedings involving the Behrens patent. It also argues that this defendant considered it such in a suit brought for the infringement of the same patent on January 25, 1944, in the District Court of the United States for the District of Maryland. Concerning the latter contention, anything occurring subsequent to the filing of the complaint in the instant case cannot be considered, in this court. The former contention that the letter constituted a threat of infringement proceedings can be considered better with the letter before us.

The letter in question was worded as follows:

"Re: Behrens Patent

"Your letter of November 18th was received. I have read it carefully but fail to find in it any answer to the point which is of particular interest to me at the present time.

"In my letter of November 17th I described what I understood to be the construction illustrated in the Hooper advertisement in 'Fiber Containers' for September 1943, and stated that as I understood the construction, at least claims 1 to 6 inclusive of the Behrens patent were directly readable upon that machine. I do not find anything in your letter pointing out wherein I was in error, either as to my statement regarding the machine or in regard to the fact that it comes within the terms of claims of the Behrens patent. Therefore I am assuming that you admit the correctness of my statements on both points. I will act accordingly.

"Yours very truly,"

(Plaintiff's Exhibit 2, attached to complaint.)

As to what constitutes an actual controversy within the meaning of the Federal Declaratory Judgment Act, supra, the Supreme Court stated as follows in Ætna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000:

"A 'controversy' in this sense must be one that is appropriate for judicial determination. Osborn v. Bank of United States, 9 Wheat. 738, 819, 6 L.Ed. 204. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. United States v. Alaska S. S. Co., 253 U.S. 113, 116, 40 S.Ct. 448, 449, 64 L.Ed. 808. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. South Spring [Hill] Gold [Min.] Co. v. Amador [Medean] Gold [Min.] Co., 145 U.S. 300, 301, 12 S.Ct. 921, 36 L.Ed. 712; Fairchild v. Hughes, 258 U.S. 126, 129, 42 S.Ct. 274, 275, 66 L.Ed. 499; [Commonwealth of] Massachusetts v. Mellon, 262 U.S. 447, 487, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

* * *" 300 U.S. at pages 240, 241, 57 S.Ct. at page 464, 81 L.Ed. 617, 108 A.L.R. 1000.

As to what constitutes an assertion of right under a patent so as to bring the question of the patent's validity into the controversial sphere is sufficiently set forth in the cases of Alfred Hofmann, Inc., v. Knitting Machines Corporation, 123 F.2d 458, and Treemond Co. v. Schering Corporation, 122 F.2d 702, both in this circuit. In the former case the court makes the following statement:

"* * * We are of the opinion that the allegation and proof by a vendor that it is engaged in a course of conduct, the sale of machinery, which has brought and must bring purchasers from it into conflict with the owner of the patent, is sufficient to support a suit for a declaratory judgment by the vendor." 123 F.2d at page 461.

The parties are at issue as to whether the aforementioned letter was a "threat" or a "warning." It does not matter under which nomenclature the letter is placed. It sufficiently raises a justiciable issue of infringement and places the parties in the position which was the gravamen of the fears expressed by the court in Treemond Co. v. Schering Corporation, supra. The court said in that case:

"Such a construction of the Federal Declaratory Judgment Act would, in our opinion, destroy its entire usefulness in patent litigation. Before the passage of that Act patentees received greater protection from the law than was warranted by their patent monopoly. Competitors desiring to introduce an article somewhat similar to one already patented met with much difficulty. The patentee could, without bringing suit, publicly claim an infringement and threaten to sue the manufacturer or anyone who dealt with the product in issue. Unless the patentee's actions were of such a character that he might be shackled with the sanctions of the law of unfair competition, he had his alleged infringer at his mercy. Although the competitor's business was gravely injured, he was remediless and in order to survive, he might be forced to make a settlement with a patentee whose claim of infringement was absolutely unfounded. Prior to the New Federal Rules of Civil Procedure, the patentee might even bolster his charges by bringing an action for in-

fringement and publicly advertising the fact to the trade. Then after postponing trial as long as possible, he could move for a dismissal without prejudice and repeat the process." 122 F.2d at pages 703, 704.

The defendant Company makes much of the argument that it was merely seeking information by means of the letter of November 22, 1943, and that it never actually threatened to commence legal proceedings against plaintiff. This argument is adequately answered by the case of Dewey & Almy Chemical Co. v. American Anode, 137 F.2d 68 (certiorari denied 320 U.S. 761, 64 S.Ct. 70), also decided in this circuit, in addition to those cited above, where the defendant asserted a scope for its patent claims publicly which embraced the methods practiced by the plaintiffs. The court remarked as follows:

"Certainly the fact that Anode had never made any direct threat to sue Dewey & Almy is not conclusive of the problem." 137 F.2d at page 70.

"* * * If Anode had published a printed notice or circular asserting that use of the described coagulant-dip processes constitutes an infringement of its patents this would undoubtedly mark the existence of an actual controversy between the patentee and all persons who engaged in practicing the process, whether they were known to the patentee or not." 137 F.2d at page 71.

Aside from the legal implications as to what constitutes an actual controversy, the aforementioned letter would reasonably lead plaintiff to believe that it would be sued if it failed to discontinue the manufacture, use and sale of its machines, as alleged in the complaint.

Since the argument of this motion plaintiff has moved for a temporary injunction restraining the defendant Company from the prosecution of the suit now pending in the United States District Court for the District of Maryland, filed on January 25, 1944, subsequent to the commencement of this action, and from prosecuting any other suit against it for the infringement of the Behrens patent.

The district court which first obtains jurisdiction of the parties and issues has the power, and is in fact in duty bound to enjoin the further prosecution of a cause involving the same parties and issues which began subsequently thereto in another United States District Court. The court first acquiring jurisdiction must be allowed to proceed without interference under such circumstances. Crosley Corporation v. Hazeltine Corporation, 3 Cir., 122 F.2d 925, certiorari denied 315 U.S. 813, 62 S.Ct. 798, 86 L.Ed. 1211; Triangle Conduit & Cable Co. v. National Elec. P. Corp., 3 Cir., 125 F.2d 1008, certiorari denied 316 U.S. 676, 62 S.Ct. 1046, 86 L. Ed. 1750. Indeed, in the case of Crosley Corporation v. Westinghouse Elec. & Mfg. Co., 3 Cir., 130 F.2d 474 (certiorari denied 317 U.S. 681, 63 S.Ct. 202, 87 L.Ed. 546), it was held that where one suit precedes the other by one day it was sufficient to attach jurisdiction to the court in which the prior cause was commenced. In that case, the court discussed the discretionary power of the district court under the Federal Declaratory Judgment Act, supra, as to jurisdiction, and its exercise according to fixed principles of law. The court said:

"* * * In patent cases, therefore, the district courts may decline jurisdiction of a suit brought in good faith to obtain declaratory relief only if it appears that the same parties and issues are involved in another suit previously begun or that in another suit subsequently begun involving the same parties and issues the questions in controversy between the parties can be better settled and relief sought by them more expeditiously and effectively afforded than in the declaratory proceeding." 130 F.2d at page 475.

An example of the exercise of this discretion appears in the case of Carbide & Carbon C. Corp. v. United States I. Chemicals, 4 Cir., 140 F.2d 47, in which the dismissal of a declaratory judgment was affirmed by the circuit court because of the pendency of a prior action in another district court. The subsequent action was held to be serving no useful purpose. The court held that a district judge's familiarity with the facts of a case due to prior litigation involving the same patent was not proof that the cause could be "more expeditiously and effectively" handled without showing that it would serve the convenience of witnesses, counsel or the parties or any other sufficient reason.

The defendant Company relies upon the case of Crosley Corporation v. Westinghouse Elec. & Mfg. Co., supra, and attempts to show that the facts in the instant case come within the language therein.

It asserts that the patent in the case at bar covers a large and expensive machine which cannot be brought into court and must be explained by witnesses having knowledge of its construction and details, and that the nearest machine sold by plaintiff, that it knows of, is in a plant in Kentucky. It points out that the plaintiff has its place of business in Baltimore and that plaintiff's counsel also has its office there. Baltimore is within the district in which defendant Company filed its complaint against plaintiff for infringing the Behrens patent subsequent to the filing of the bill of complaint herein.

It is the opinion of this court that the facts shown are not sufficient to warrant its refusing jurisdiction to the parties. The defendant Company is a resident of New Jersey and with equal weight plaintiff might argue that it is more convenient for it to try the cause in this district. Assuming that the purchaser of one of plaintiff's machines is in Kentucky, that fact alone cannot be deemed important for this court to refuse to take jurisdiction of this cause. The machine does not appear large enough to prevent its being moved and even if that were so the equities of the parties concerning the convenience of witnesses, counsel and themselves are equal. The plaintiff's choice of forum must prevail because of the priority of its action.

To summarize, orders should be taken as follows:

1. By the plaintiff: To amend the complaint by inserting the proffered allegations that the Langston Company is the true owner of the equitable title of the Langston patent.

2. To amend the complaint so as to set forth two separate causes of action in connection with (a) the Langston patent and (b) the Behrens patent.

3. To sever the cause of action brought in connection with the Langston patent from the one brought in connection with the Behrens patent.

4. To restrain, until the further order of this court, the Langston Company from prosecuting the suit instituted by it in the United States District Court for the District of Maryland against plaintiff Hooper Company based upon alleged infringement of the Langston Company patent No. 17, of which Behrens is the inventor, and from commencing any other action against plain-

tiff Hooper Company for the infringement of said patent.

5. By the defendant Samuel M. Langston: To dismiss as to Samuel M. Langston, individually, in connection with the Behrens patent cause of action.

Submit orders on motion day, at Trenton, Saturday, September 2, 1944, at 10 a. m.